UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ABM INDUSTRY GROUPS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF LABOR, a federal administrative agency; OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS, an administrative subdivision of the Department of Labor; JULIE A. SU, in her official capacity as the Acting Secretary of Labor; MICHELE HODGE, in her official capacity as the Acting Director of the Office of Federal Contract Compliance Programs of the United States Department of Labor; and WILLOW EDEN FORT, in her official capacity as an Administrative Law Judge of the United States Department of Labor,<br><br>    Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff ABM Industry Groups, LLC ("ABM") brings this action for declaratory and injunctive relief, alleging as follows:

**INTRODUCTION**

1. Normally, when one party accuses another party of breaching their contract, the judicial system adjudicates their dispute.

2. Here, however, ABM is being compelled to defend itself against a contractual claim for millions of dollars of alleged monetary damages in an adjudicative proceeding run by the same federal administrative agency that accuses it of breach.

3. If this seems wrong, it is because it is. The structure of this administrative proceeding violates the Constitution in multiple ways—to say nothing of basic notions of fairness.

4. The Office of Federal Contract Compliance Programs ("OFCCP") is an agency within the United States Department of Labor ("DOL") that, among other responsibilities, aims to ensure that federal government contractors comply with Executive Order 11246.

5. Executive Order 11246, as amended, instructs federal agencies to include standard language in their government contracts obligating the contractor to avoid unlawful discrimination against employees or applicants for employment and to "take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, sexual orientation, gender identity, or national origin." Executive Order 11246, § 202.[1]

6. As OFCCP describes it, these requirements obligate contractors to engage in training programs, outreach efforts, and other steps to recruit and advance in employment qualified minorities and women.

7. In practice, OFCCP evaluates contractors' compliance with their contractual obligations by conducting "Compliance Evaluations" ("audits") of contractor employment practices and pursuing enforcement actions if it finds its audit results objectionable.

8. Here, OFCCP conducted an audit and alleged that ABM was unlawfully discriminating at three of its thousands of Branch establishments against certain applicants for janitorial and cleaning jobs. More specifically, OFCCP alleges that ABM favored Hispanic applicants to the detriment of White and Black applicants—in other words, ABM hired too many Hispanic workers. OFCCP based its claims solely on statistical analyses, without any applicant complaints or anecdotal evidence establishing that ABM intentionally discriminated in its hiring processes at these work locations.

---

[1] https://www.dol.gov/agencies/ofccp/executive-order-11246/as-amended

9. ABM strongly denies that it has violated its contractual obligations or engaged in any form of unlawfully discriminatory hiring practice.

10. But that is not what this lawsuit is about.

11. ABM is not seeking to avoid scrutiny of its contractual performance or hiring practices. ABM is seeking to present its defenses before the proper forum and the proper decisionmaker.

12. Rather than attempt to enforce its contracts in Court, OFCCP is pursuing its allegations against ABM in house—through agency proceedings before a DOL Administrative Law Judge ("ALJ").

13. Thus, a single agency is simultaneously prosecuting and adjudicating an administrative complaint accusing ABM of having breached its contracts and seeking, among other remedies, multimillion-dollar damages for the alleged breach.

14. This consolidation of prosecutorial and adjudicative powers happens not through any statute but through a purely regulatory framework that springs from Executive Order 11246 and its implementing regulations. Through these regulations, OFCCP can choose between referring its contractual claims to DOL for in-house agency proceedings or to the Department of Justice ("DOJ") to pursue relief in federal court. 41 C.F.R. § 60-1.26(b)–(c).

15. When OFCCP decides to pursue its claims through referral to DOL for an in-house enforcement action, those regulations provide that the claims will be adjudicated by an ALJ in DOL's Office of Administrative Law Judges. 41 C.F.R. § 60-1.26(b)(2).

16. The ALJ takes evidence, resolves contested questions of fact and law, and renders a decision on the claims. *See* 5 U.S.C. § 556(c); 29 C.F.R. §§ 18.10–.95; *see also* 41 C.F.R. § 60-1.26(b)(2).

17. OFCCP took the in-house approach here, as it almost always does. On September 15, 2021, it commenced an administrative proceeding against ABM before an ALJ ("the ALJ Proceeding").

18. OFCCP's administrative complaint makes no effort to hide its assertion of a breach-of-contract claim. From the first paragraph, the complaint makes clear that the administrative "action is brought by OFCCP to enforce the contractual obligations imposed by Executive Order 11246 . . . and the rules and regulations issued pursuant thereto." Based on this alleged contractual breach, the complaint seeks to require ABM to provide "complete relief" to White and Black applicants ABM did not hire, including "back pay, interest, front pay retroactive seniority, and all other benefits of employment."

19. ABM brings this action because the pursuit of these claims and this relief in the ALJ Proceeding violates the Constitution in two fundamental ways, and this Court should enjoin the ALJ Proceeding to prevent ABM from having to continue to defend itself in this unlawful administrative process rather than a court of law.

20. **First**, the administrative adjudication of OFCCP's claims for money damages arising from an alleged breach of contract violates ABM's rights under the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII.

21. As the Supreme Court recently emphasized, "[t]he right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (citation omitted).

22. Even when *Congress* tries to assign a statutory claim to an administrative agency, the Seventh Amendment applies with full force—so long as the claim is "legal in nature" rather

than a claim within courts' traditional equity or admiralty jurisdiction. *Id.* (citation omitted); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989). Congress likewise cannot "confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 334 (2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

23. Compelling ABM to defend itself against OFCCP's suit for breach of contract in an administrative forum is even worse because Congress never assigned these claims to an administrative agency. OFCCP selected that forum for itself, through DOL regulations. Yet the breach-of-contract remedy that OFCCP seeks and underlying cause of action are plainly "legal in nature" and thus "implicate[]" ABM's "Seventh Amendment rights." *Jarkesy*, 144 S. Ct. at 2130.

24. "To impose personal liability on [ABM] for a contractual obligation to pay money [is] relief that was not typically available in equity" but rather is "quintessentially an action at law." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted).

25. OFCCP seeks money damages to compensate private individuals for ABM's alleged failure to comply with its government contract's terms. "[M]oney damages are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129.

26. The ALJ Proceeding thus violates the Seventh Amendment and Article III and would deprive ABM of its constitutional rights to have these legal claims and damages adjudicated by a jury in a court.

27. **Second**, the ALJ Proceeding also violates the Constitution because the ALJ is insufficiently accountable to the head of the executive branch, the President.

28. Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 591 U.S. 197, 203 (2020).

29. To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

30. The Fifth Circuit has held that this removal power extends to ALJs because they "perform substantial executive functions." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2023).

31. But the President cannot meaningfully control or oversee such ALJs if they are insulated by "[t]wo layers of for-cause protection"—that is, if the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id.*; *see Free Enter. Fund*, 561 U.S. at 492–508.

32. So, in *Jarkesy*, the Fifth Circuit held that the removal restrictions for ALJs set forth in 5 U.S.C. § 7521(a) are unconstitutional as applied to ALJs of the Securities and Exchange Commission ("SEC"). *Jarkesy*, 34 F.4th at 465.

33. The same reasoning applies to DOL ALJs. "[L]ike their SEC counterparts," DOL ALJs perform substantial executive functions: they "conduct trial-like hearings, receive evidence, examine witnesses, issue subpoenas, rule on procedural and dispositive motions, and render decisions." *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 143 (4th Cir. 2023) (quoting *Lucia v. SEC*, 585 U.S. 237, 238 (2018)). These activities, although they take a judicial form, are exercises of "the 'executive Power,' for which the President is ultimately responsible." *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (citations omitted).

34. Yet the President cannot adequately control ALJs' performance of these functions because the President's ability to remove DOL ALJs is impeded by two layers of for-cause removal protection: like SEC ALJs, DOL ALJs are removable only for cause as determined by Merit

Systems Protection Board ("MSPB") Members, who are themselves removable only for cause. *See* 5 U.S.C. §§ 1202(d), 7521(a).

35. Such multilayered removal protection violates the Constitution by impairing the President's ability to hold subordinate officers responsible for the performance of their executive duties. *See Free Enter. Fund*, 561 U.S. at 495–98; *Jarkesy*, 34 F.4th at 463.

36. For this reason, too, OFCCP's ALJ hearing framework is unlawful.

37. But OFCCP can avoid these problems. No statute requires OFCCP "to concentrate the roles of prosecutor, judge, and jury in the hands of the Executive Branch," which "is the very opposite of the separation of powers that the Constitution demands." *Jarkesy*, 144 S. Ct. at 2139. It is DOL's own regulations that authorize such proceedings. And the same regulations already permit OFCCP an alternative that would avoid these constitutional problems: it can refer alleged contract violations to DOJ and recommend "the institution of judicial enforcement proceedings." 41 C.F.R. § 60-1.26(c)(1).

38. OFCCP may prefer home-field advantage, but it can, and must, pursue such contract claims in an Article III court as the Constitution demands.

39. The Court should enter the declaratory and injunctive relief ABM seeks to ensure that ABM is not subjected to unlawfully structured administrative proceedings and instead receives its constitutionally protected day in court.

## JURISDICTION AND VENUE

40. This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over ABM's claims that fundamental structural aspects of the DOL ALJ proceedings against it violate the Constitution. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 190–96 (2023).

41. The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

42. Venue is proper in this district under 28 U.S.C. § 1391(e)(1). Defendants are officers of an agency of the United States acting in their official capacity. ABM resides in this district because its principal place of business is in Sugar Land, Texas.

## PARTIES

43. Plaintiff ABM Industry Groups, LLC is a Delaware limited liability company with its principal place of business in Sugar Land, Texas.

44. Defendant the United States Department of Labor is an administrative agency of the United States, headquartered in Washington, D.C.

45. Defendant the Office of Federal Contract Compliance Programs is an administrative subdivision of DOL, headquartered in Washington, D.C.

46. Defendant Julie A. Su is the Acting Secretary of Labor. She is sued in her official capacity.

47. Defendant Michele Hodge is the Acting Director of OFCCP. She is sued in her official capacity.

48. Defendant Willow Eden Fort is an administrative law judge within DOL, who presides over the ALJ Proceeding against ABM. She is sued in her official capacity.

## FACTS

49. On September 15, 2021, OFCCP filed an administrative action against ABM within DOL. Although OFCCP had the option to pursue its claims in federal courts and afford ABM the constitutional protections of an Article III adjudication, it instead chose to bring an in-house agency action.

50. ABM has always taken its obligations to engage in nondiscriminatory hiring practices seriously. And, as a federal contractor, ABM has taken steps to ensure compliance with its contractual obligations and other legal obligations.

51. ABM supplies cleaning and janitorial services under contracts with the federal government.

52. The ALJ Proceeding that ABM challenges as unconstitutional in this litigation arises from a dispute as to whether ABM complied with its contractual obligations under Executive Order 11246, as amended.

53. Government contracts generally require compliance with Executive Order 11246 as a contractual term.

54. OFCCP conducts regular audits of federal contractors to ensure contractors' compliance with the contractual obligation to meet the requirements of Executive Order 11246.

55. Here, after an audit of ABM, OFCCP alleged that by hiring too many Hispanic workers, ABM breached its obligations under Executive Order 11246 with respect to three ABM Branch establishments.

56. OFCCP's theory is that ABM discriminated against both White and Black applicants in favor of Hispanic applicants.

57. On August 7, 2019, OFCCP issued three Notices of Violation to the ABM Branch establishments at issue.

58. On September 15, 2021, OFCCP filed its original administrative complaint against ABM Janitorial Services – MidAtlantic, Inc., an entity that had ceased to exist. In January 2017, ABM Janitorial Services – Mid Atlantic, Inc. merged into ABM Industry Groups, LLC. On March 31, 2022, OFCCP filed an amended complaint against ABM Industry Groups, LLC as successor

to ABM Janitorial Services – Mid Atlantic, Inc.  And OFCCP has stipulated that ABM Industry Groups, LLC is the proper defendant in the ALJ Proceeding.

59. OFCCP's amended complaint alleges that three ABM Branch establishments (55502, 55503, and 55504) did not comply with their contractual obligations imposed by Executive Order 11246, and the rules and regulations issued pursuant thereto at 41 C.F.R. Chapter 60.

60. OFCCP contends that ABM violated the Executive Order by engaging in racially unlawful discriminatory hiring practices, failing to preserve and maintain personnel and employment records, failing to conduct adverse impact analyses, and failing to develop an auditing system.

61. Defendant Fort is currently assigned to the case as the ALJ for hearing and decision.

62. The ALJ Proceeding is ongoing, and under the current schedule, dispositive motions are due on November 8, 2024, and the administrative adjudicatory hearing is scheduled to begin February 25, 2025.

## COUNT I – THE ALJ'S ADJUDICATION VIOLATES THE SEVENTH AMENDMENT AND ARTICLE III

63. ABM restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

64. The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII.

65. This provision protects the jury's role "as a fact-finding body" and entitles parties "to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

66. "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Jarkesy*, 144 S. Ct. at 2128 (quoting *Granfinanciera*, 492 U.S. at 53). "To determine whether a suit is legal in nature," courts are "to consider the cause of action and the remedy it provides." *Id.* at 2129.

67. Here, much as in *Jarkesy*, "the remedy is all but dispositive." *Id.*

68. In the ALJ Proceeding, OFCCP seeks compensatory money damages for the alleged contractual violations. These money damages—although including relief labeled "backpay"—cannot be characterized as equitable remedies because the individuals who would receive the compensation were never ABM employees. *See Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 97–98 (1991) (determining that a claim for lost wages for a job for which the claimant had not been hired triggered a jury trial right because it was not restitutionary in nature or incident to an equitable order of reinstatement); *cf.* OFCCP, Federal Contract Compliance Manual, 7C06 (2023) ("Back pay serves to remedy lost earnings that the victims would have received absent discrimination.").[2]

69. The "money damages" sought by OFCCP are the "prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129; *Great-W. Life & Annuity*, 534 U.S. at 210 ("Petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity.").

70. ABM therefore has a right to have a jury decide whether it is liable for breach of contract and the extent of any damages. *See, e.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962).

---

[2] https://www.dol.gov/sites/dolgov/files/OFCCP/FCCM/508_FCCM-4_10_20-FINAL-09242023.pdf

71. There is also "close relationship" between OFCCP's underlying cause of action and common law cause of action. In fact, here, there is complete overlap between the administrative claim and a common law cause of action, breach of contract. This overlap "confirms" that OFCCP's administrative claim is legal in nature, *Jarkesy*, 144 S. Ct. at 2130, and indeed is dispositive given the historic availability of a jury in breach of contract cases. *See, e.g.*, *Dairy Queen*, 369 U.S. at 477 ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.").

72. The Supreme Court has held that breach-of-contract actions are considered legal in nature even when the plaintiff seeks a remedy other than money damages. *See Simler v. Conner*, 372 U.S. 221, 223 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues which can be and should have been submitted to a jury under appropriate instructions[.]").

73. ABM's right to a jury trial is not undercut by the fact that DOL proceedings are administrative in nature.

74. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency" like the DOL. *Granfinanciera*, 492 U.S. at 61.

75. Nor does this scenario fall within the narrow "public rights" exception that allows certain claims to be resolved outside of an Article III court. *See Jarkesy*, 144 S. Ct. at 2131–34.

76. When, as here, the "suit is in the nature of an action at common law, then the matter presumptively concerns private rights." *Id.* at 2132.

77. Here, OFCCP's complaint is a dispute about contractual rights and thus presumptively cannot be withdrawn from the cognizance of an Article III jury.

78. That is particularly evident from the fact that OFCCP hopes to provide individualized relief on a classwide basis to "[m]ake the discrimination victims whole." Federal Contract Compliance Manual, *supra*, 7C. The Supreme Court has explained that "the liability of one individual to another under the law" is a "matter[] of private right." *Stern*, 564 U.S. at 489.

79. Here, moreover, the public rights exception is also inapplicable for a more fundamental reason: The public rights exception allows "*Congress* to assign certain matters to agencies for adjudication," *Jarkesy*, 144 S. Ct. at 2127 (emphasis added), but Congress has not authorized breach-of-contract actions against federal contractors to be adjudicated in administrative agency proceedings.

80. Without interim injunctive relief from this Court, ABM's claims will be improperly adjudicated by a DOL officer instead of a jury in an Article III court.

81. ABM bears a strong likelihood of success on this claim for the reasons detailed above.

82. But unless Defendants are enjoined from moving forward with the ALJ Proceeding in place of an Article III proceeding before a jury, ABM will be irreparably harmed.

83. Deprivation of an individual constitutional right is often an irreparable injury—even for minimal amounts of time. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

84. And having to appear in unconstitutionally structured agency proceedings is an injury that cannot be remedied once the proceeding is over. *Axon Enter.*, 598 U.S. at 191.

85. The harm to ABM, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the government if such relief is granted.

86. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting constitutional rights.

87. Moreover, OFCCP remains free to pursue these types of breach-of-contract allegations before a federal court through referral to the DOJ, as the relevant regulations authorize.

## COUNT II – DOL ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

88. ABM restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

89. DOL ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *Jarkesy*, 34 F.4th at 464; *K&R Contractors*, 86 F.4th at 143 (Fourth Circuit recognizing that DOL ALJs are officers of the United States because they "conduct trial-like hearings, receive evidence, examine witnesses, issue subpoenas, rule on procedural and dispositive motions, and render decisions."); *see also* 5 U.S.C. § 556(c); 29 C.F.R. §§ 18.10–.95.

90. These activities, even though they take a judicial form, are still exercises of "the '"executive Power,"'" for which the President is ultimately responsible." *Arthrex*, 594 U.S. at 17 (citations omitted).

91. Given DOL ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

92. Yet the President cannot adequately control the performance of these ALJs' functions because DOL ALJs are insulated from presidential control by two layers of for-cause removal protection. *See Free Enter. Fund*, 561 U.S. at 492–508.

93. First, ALJs are removable only for cause, as determined by the MSPB. 5 U.S.C. § 7521(a).

94. Second, MSPB Members also are removable only for cause—"inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

95. The statutes' two layers of removal protection impermissibly restrict presidential authority and thus violate Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492–508.

96. But for these unlawful removal restrictions, the ALJ assigned to ABM's administrative case would face the prospect of removal by the President based on her conduct during the proceedings.

97. Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 598 U.S. at 191 (citation omitted).

98. Merely being subject to a hearing and decision in proceedings before an insulated ALJ causes ABM ongoing harm. *See, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter.*, 143 S. Ct. 890.

99. This harm exists even if a President does not actively desire to remove a particular ALJ, because the mere potential for removal influences how rational ALJs carry out their duties. After all, Congress sought to make DOL ALJs politically independent for a reason: it wanted to

insulate them from political pressures. *See, e.g.*, *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part and dissenting in part).

100. In addition, a showing of particularized cause and effect between the removal restrictions and ALJ actions is unnecessary to declare that the removal restrictions are unconstitutional.

101. ABM is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [ABM is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

102. Without interim injunctive relief from this Court, ABM will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

103. ABM bears a strong likelihood of success on this claim for the reasons detailed above.

104. But unless Defendants are enjoined from proceeding against ABM before an ALJ unconstitutionally insulated from presidential oversight, ABM will be irreparably harmed.

105. Deprivation of an individual constitutional right is often an irreparable injury, *Elrod*, 427 U.S. at 373, and having to appear in unconstitutionally structured agency proceedings is an injury that cannot be remedied once the proceeding is over, *Axon Enter.*, 598 U.S. at 191.

106. The harm to ABM, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the government if such relief is granted.

107. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting constitutional rights.

108. Moreover, OFCCP remains free to pursue these types of breach-of-contract allegations before a federal court through referral to the DOJ, as the relevant regulations authorize.

## PRAYER FOR RELIEF

**WHEREFORE**, ABM hereby requests that the Court order the following relief and enter a judgment:

1. Declaring that:

    a. The ALJ Proceeding against ABM unlawfully deprives ABM of its constitutional right to trial by jury in an Article III court; and

    b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of DOL ALJs, including Defendant Fort, are unconstitutional; and

2. Preliminarily enjoining Defendants from subjecting ABM to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from subjecting ABM to unconstitutionally structured administrative proceedings;

4. Awarding ABM its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

5. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated:  September 9, 2024                          Respectfully submitted,

                                                   s/ *Catherine L. Eschbach*

**FOX, WANG & MORGAN P.C.**                        **MORGAN LEWIS & BOCKIUS LLP**
John C. Fox (*pro hac vice* forthcoming)           Catherine L. Eschbach
Alexa L. Morgan (*pro hac vice* forthcoming)       Attorney-in-Charge
Jay J. Wang (*pro hac vice* forthcoming)           Texas Bar No. 24097665
Of Counsel                                         Southern District of Texas Bar No. 3846447
315 University Ave.,                               1000 Louisiana Street, Suite 4000
Los Gatos, CA 95030                                Houston, TX 77002-5006
jfox@foxwangmorgan.com                             catherine.eschbach@morganlewis.com
amorgan@foxwangmorgan.com                          Tel: (713) 890-5719
jwang@foxwangmorgan.com                            Fax: (713) 890-5001
Tel.: (408) 844-2350
Fax: (408) 844-2351                                Michael E. Kenneally (*pro hac vice* forthcoming)
                                                   Of Counsel
                                                   1111 Pennsylvania Avenue, N.W.
                                                   Washington, DC  20004-2541
                                                   michael.kenneally@morganlewis.com
                                                   Tel: (202) 739-3000
                                                   Fax: (202) 739-3001

                                                   *Counsel for Plaintiff ABM Industry Groups, LLC*