# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **ABM INDUSTRY GROUPS, LLC,** | |
|     **Plaintiff,** | |
|       **v.** | Civil Action No. 4:24-cv-03353 |
| **UNITED STATES DEPARTMENT OF LABOR, a federal administrative agency; OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS, an administrative subdivision of the Department of Labor; JULIE A. SU, in her official capacity as the Acting Secretary of Labor; MICHELE HODGE, in her official capacity as the Acting Director of the Office of Federal Contract Compliance Programs of the United States Department of Labor; and WILLOW EDEN FORT, in her official capacity as an Administrative Law Judge of the United States Department of Labor,** | |
|     **Defendants.** | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 5

ARGUMENT ........................................................................................................ 7

    I.     ABM Is Likely to Succeed on the Merits of Its Constitutional Claims. ............... 8

         A.     ABM's Seventh Amendment Claim ........................................... 8

         B.     ALJ Removal Protection Claim ................................................. 12

    II.    ABM Will Face Irreparable Harm Without a Preliminary Injunction. ................ 15

         A.     Seventh Amendment Harm ....................................................... 16

         B.     Harm from Unconstitutionally Insulated ALJ ......................................... 17

         C.     Economic and Reputational Harms ........................................... 18

    III.   The Balance of Harms and Public Interest Favor a Preliminary Injunction. ....... 19

CONCLUSION ..................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ......................................................17

*Atlas Roofing Co., Inc. v. OSHRC*,
430 U.S. 442 (1977) ......................................................................................................12

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ................................................................................................4, 17, 18, 19

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) ......................................................................................5, 19, 20

*Burgess v. FDIC*,
639 F. Supp. 3d 732 (N.D. Tex. 2022) ......................................................................4, 12, 16

*Dairy Queen, Inc. v. Wood*,
369 U.S. 469 (1962) ......................................................................................................10

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) ......................................................................................15, 20

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
661 F.2d 328 (5th Cir. 1981) ......................................................................................16

*Dimick v. Schiedt*,
293 U.S. 474 (1935) ......................................................................................................8, 16

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) ......................................................................................................18

*Elrod v. Burns*,
427 U.S. 347 (1976) ......................................................................................................16

*Energy Transfer, LP v. NLRB*,
No. 3:24-CV-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) ..........................4, 13, 15, 18

*Feltner v. Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998) ......................................................................................................9

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010) ................................................................................................13, 14, 18, 20

*Granfinanciera, S. A. v. Nordberg*,
   492 U.S. 33 (1989) ...................................................................................................8, 12

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ...............................................................................................2, 9, 10

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) .............................................................................3, 12, 13, 14

*K&R Contractors, LLC v. Keene*,
   86 F.4th 135 (4th Cir. 2023) ...................................................................................3, 14

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ...........................................................................................19

*Louisiana v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) ....................................................................................7, 20

*Lucia v. SEC*,
   585 U.S. 237 (2018) .........................................................................................................3

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ....................................................................................................2, 9

*Myers v. United States*,
   272 U.S. 52 (1926) .........................................................................................................13

*Nken v. Holder*,
   556 U.S. 418 (2009) .......................................................................................................19

*Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*,
   584 U.S. 325 (2018) .........................................................................................................8

*SEC v. Jarkesy*,
   144 S. Ct. 2117 (2024) ......................................................................................... *passim*

*Seila L. LLC v. CFPB*,
   591 U.S. 197 (2020) .......................................................................................................13

*Simler v. Conner*,
   372 U.S. 221 (1963) .......................................................................................................10

*Space Expl. Techs. Corp. v. NLRB*,
   No. W-24-CV-00203-ADA, 2024 WL 3512082, (W.D. Tex. July 23, 2024) ................ *passim*

*SpaceX v. Bell*,
   701 F. Supp. 3d 626 (S.D. Tex. 2023) ..........................................................................18

*SpaceX v. NLRB,*
No. 24-40315, Dkt. 40-2 (5th Cir. May 2, 2024)............................................................12

*Stern v. Marshall,*
564 U.S. 462 (2011)..............................................................................8, 11, 12, 20

*Tull v. United States,*
481 U.S. 412 (1987)..............................................................................8, 10, 12

*Walmart Inc. v. King,*
No. CV 623-040, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024) ...........................................15

*Ward v. Village of Monroeville,*
409 U.S. 57 (1972)..............................................................................17

*Wenner v. Tex. Lottery Comm'n,*
123 F.3d 321 (5th Cir. 1997) ...........................................................18

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008)..............................................................................2, 7

*Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71,*
502 U.S. 93 (1991)..............................................................................9

**Statutes**

5 U.S.C. § 556(c) ..............................................................................14

5 U.S.C. § 1202(d) ..............................................................................3, 4, 13, 14

5 U.S.C. § 7521(a) ..............................................................................3, 4, 13, 14

**Other Authorities**

29 C.F.R. §§ 18.10-.95..............................................................................14

41 C.F.R. § 60-1.26(b)–(c)..............................................................................6, 5, 11, 20

U.S. Const. art. II ..............................................................................*passim*

U.S. Const. art. III ..............................................................................*passim*

U.S. Const. amend. VII ..............................................................................*passim*

Fed. R. Civ. P. 38 ..............................................................................16

Fed. R. Civ. P. 39 ..............................................................................16

Fed. R. Civ. P. 65(a) ..............................................................................1

Executive Order 11246 ................................................................................................ *passim*

OFCCP, Federal Contract Compliance Manual, 7C06 (2023),
    https://www.dol.gov/agencies/ofccp/manual/fccm/7c-types-remedies/7c06-
    back-pay ................................................................................................................. 9

Plaintiff ABM Industry Groups, LLC ("ABM") moves under Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction against Defendants—the United States Department of Labor ("DOL"), the Acting Secretary of Labor, the Office of Federal Contract Compliance Programs ("OFCCP"), the Acting Director of OFCCP, and a DOL Administrative Law Judge ("ALJ")—to block an unconstitutionally structured administrative proceeding that Defendants are conducting against ABM.  The ALJ is already making significant decisions in the administrative proceeding and will continue to do so as the proceeding moves forward to its conclusion.  The requested injunctive relief is necessary to prevent ABM from suffering irreparable harm before the Court can adjudicate this lawsuit's claims.  To secure relief in advance of upcoming administrative-proceeding deadlines and prevent irreparable harm from further participation in those unconstitutional proceedings, ABM respectfully requests that the Court rule on this motion by **October 31, 2024**.  Plaintiff respectfully requests a hearing on this motion as soon as practicable after the motion is fully briefed.

## INTRODUCTION

ABM filed this action because Defendants are subjecting ABM to an administrative proceeding that under binding Supreme Court and Fifth Circuit precedent violates ABM's constitutional rights in at least two ways.  *See* Dkt. No. 1 ("Compl.") ¶¶ 63-108.  ABM supplies cleaning and janitorial services under contracts with the federal government.  OFCCP, a subdivision within DOL, alleges that ABM breached certain obligations under those contracts.  To pursue those allegations and seek an award of money damages that allegedly compensate for the breach, OFCCP filed an administrative action against ABM within DOL.  *See* Amended Administrative Complaint (attached as **Ex. A**).  The administrative case is now assigned to an ALJ for decision.  Because ABM "is likely to succeed on the merits," "likely to suffer irreparable harm

in the absence of preliminary relief," has "the balance of equities" tipping in ABM's favor, and seeks an injunction that is "in the public interest," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), a preliminary injunction is warranted.

      **Likelihood of Success.** ABM is likely to succeed on both of its claims asserting that the DOL proceeding violates the Constitution.

      First, the proceeding infringes ABM's Seventh Amendment rights by seeking to adjudicate—with no jury, outside an Article III court—a dispute that is in essence a contract action for damages. The Supreme Court recently held that administrative adjudications cannot evade the requirements of the Seventh Amendment and Article III merely because a federal agency prefers administrative adjudication over proceedings in court. In *SEC v. Jarkesy*, 144 S. Ct. 2117, 2139 (2024), the Court determined that an administrative proceeding by the Securities and Exchange Commission ("SEC"), which sought to recover civil penalties for fraud, was unconstitutional because the defendant had a right to proceed before a jury in an Article III court. That administrative proceeding was "legal in nature" because it sought non-equitable monetary relief through a cause of action that resembled common law fraud, and the limited exception for public rights that Congress may assign to administrative tribunals did not apply. *Id.* at 2127-39. The same reasoning governs here. The remedy Defendants seek against ABM—money damages— conclusively shows that the DOL proceeding is legal in nature. "[M]oney damages are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)). In addition, OFCCP's cause of action also tracks a "quintessential[]" common law cause of action, breach of contract. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted). As in *Jarkesy*, the public rights exception is inapplicable because the substance of the administrative action "is in the nature of an action at

2

common law." 144 S. Ct. at 2132, 2135-36.  And, in any event, Congress has not even attempted to assign these claims to an administrative agency.  The DOL has done that on its own initiative through a series of regulations.  There is no basis to remove these claims from the cognizance of an Article III court.

Second, the proceeding infringes ABM's interests under the Constitution's separation of powers by assigning that dispute to an ALJ who is situated in the Executive Branch yet unaccountable to the head of that Branch, the President.  The Fifth Circuit has held that when, as here, an ALJ exercises substantial executive functions within an administrative adjudication, the President must have the power to control the ALJ and even remove the ALJ from office if the President deems it appropriate.  *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024).  In the Fifth Circuit's *Jarkesy* decision, the court held that SEC ALJs were unconstitutionally insulated from presidential control by multiple layers of removal protection:  the ALJs may be removed by the agency "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")]."  5 U.S.C. § 7521(a).  And the MSPB's members may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).  The presence of "[t]wo layers of for-cause protection" impedes the President's ability to control these ALJs and thus violates the Constitution.  *Jarkesy*, 34 F.4th at 463.  Once again, the same reasoning applies here.  DOL ALJs are inferior officers who, "like their SEC counterparts," exercise important executive functions when they "conduct trial-like hearings, receive evidence, examine witnesses, issue subpoenas, rule on procedural and dispositive motions, and render decisions."  *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 143 (4th Cir. 2023) (quoting *Lucia v. SEC*, 585 U.S. 237, 238 (2018)).  And the same statutes that unconstitutionally protected SEC ALJs through two layers of for-cause removal restriction, *see*

5 U.S.C. §§ 1202(d), 7521(a), apply equally to DOL ALJs.  ABM is therefore likely to succeed on the merits of this claim, too.

**Irreparable Injury.**  Unless the Court halts the ongoing DOL proceedings pending a final resolution of this litigation, ABM will suffer irreparable harm.  Courts in this Circuit have held that having to undergo administrative proceedings that violate the Seventh Amendment's right to trial by jury or Article II's prohibition on multilayer removal protections for ALJs constitutes irreparable harm sufficient to support a preliminary injunction.  *See Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022) ("Since the Court has determined that Plaintiff was entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied[.]"); *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *4 (S.D. Tex. July 29, 2024) ("The harm of being subjected to a proceeding by an unaccountable ALJ is an injury that cannot be undone [and] by definition irreparable." (citations and quotation marks omitted)); *Space Expl. Techs. Corp. v. NLRB* ("*SpaceX*"), No. W-24-CV-00203-ADA, 2024 WL 3512082, at *6 (W.D. Tex. July 23, 2024) ("[H]aving to proceed before an unaccountable ALJ is an irreparable injury in the context of a Preliminary Injunction pursuant to a ALJ removal-protection claim[.]").  Even if the Court remedies this constitutional defect in its final judgment, it cannot undo the injury ABM will suffer in the meantime through "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker," that "violate[s] the separation of powers." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).  Under binding Supreme Court and Fifth Circuit precedent, such harm is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Id.* (citation omitted).  And even beyond that irreparable injury, ABM will suffer further irreparable injuries to its reputational and business interests as a result of these unconstitutional

proceedings.  These harms also are irreparable even if the Court ultimately corrects the agency's structural flaws prospectively.

**Balance of Equities and Public Interest.**  For similar reasons, the balance of equities and public interest weigh strongly in ABM's favor.  An injunction will spare ABM constitutional injury but work no real harm on Defendants.  Under their own regulations, they already possess the ability to pursue their contractual claims, through the Department of Justice ("DOJ"), in court proceedings.  *See* 41 C.F.R. § 60-1.26(c).  More to the point, "[t]he government suffers no cognizable harm from stopping 'the perpetuation of unlawful agency action.'"  *SpaceX*, 2024 WL 3512082, at *7 (citation omitted).  And "[t]he public interest is also served by maintaining our constitutional structure."  *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

Because ABM satisfies the four preliminary injunction factors for both its claims, this Court should grant ABM's motion and preliminarily enjoin the DOL proceedings against it.

## BACKGROUND

This case arises from an administrative complaint filed by OFCCP, which alleges that ABM breached its obligations under certain government contracts.  Compl. ¶¶ 17-19, 52.  OFCCP is a DOL agency that, among other responsibilities, aims to ensure that federal government contractors comply with Executive Order 11246.  *Id.* ¶ 4.  ABM provides cleaning and janitorial services under contracts with the federal government and complying with Executive Order 11246 is a condition of those contracts.  *Id.* ¶¶ 51-53.

Executive Order 11246, as amended, instructs federal agencies to include standard language in their government contracts obligating the contractor to avoid unlawful discrimination against employees or applicants for employment and to "take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to

their race, color, religion, sex, sexual orientation, gender identity, or national origin."  Executive Order 11246, § 202.  As OFCCP describes it, these requirements obligate contractors to engage in training programs, outreach efforts, and other steps to recruit and advance qualified minorities and women.  Compl. ¶ 6.  In practice, OFCCP assesses contractors' compliance with their contractual obligations by conducting its own statistical analyses of contractors' employment practices and pursuing enforcement action if it finds the statistical results objectionable.  *Id.* ¶ 7.  OFCCP conducts "Compliance Evaluations" ("audits") of federal contractors to ensure contractors' compliance with the contractual obligation to comply with Executive Order 11246.  *Id.* ¶ 8.

OFCCP filed its administrative complaint against ABM on September 15, 2021.  *Id.* ¶ 58.  Although OFCCP had the option to pursue its claims in federal court and afford ABM the constitutional protections of an Article III adjudication, *see* 41 C.F.R. § 60-1.26(b)–(c), it instead chose to bring an in-house agency action.  OFCCP originally filed its administrative complaint against ABM Janitorial Services, Inc. – MidAtlantic, Inc., an entity that had ceased to exist by the time OFCCP initiated administrative proceedings on September 15, 2021.  Compl. ¶ 58.  In January 2017, ABM Janitorial Services – Mid Atlantic, Inc. merged into ABM Industry Groups, LLC.  *Id.*  On March 31, 2022, OFCCP filed an amended complaint against ABM Industry Groups, LLC as successor to ABM Janitorial Services – Mid Atlantic, Inc.  Ex. A.  The parties stipulated that ABM Industry Groups, LLC is the proper defendant in the administrative action.  Compl. ¶ 58.

OFCCP's amended complaint alleges that three ABM Branch establishments (55502, 55503, and 55504)—out of ABM's thousands of Branch establishments—did not comply with their contractual obligations imposed by Executive Order 11246, and the rules and regulations issued pursuant thereto at 41 C.F.R. Chapter 60.  Ex. A, ¶¶ 1, 14-17.  OFCCP contends that ABM violated the Executive Order by engaging in racially unlawful discriminatory hiring practices,

failing to preserve and maintain personnel and employment records, failing to conduct adverse impact analyses, and failing to develop an auditing system. *Id.* ¶ 17. More specifically, OFCCP alleges that ABM unlawfully discriminated against White and Black applicants for janitorial and cleaning jobs in favor of Hispanic applicants. *Id.* ¶¶ 18-46. OFCCP contends, in other words, that ABM hired too many Hispanic workers. OFCCP based its claims solely on statistical analyses of the three Branch establishments, without any applicant complaints or anecdotal evidence establishing that ABM intentionally discriminated in its hiring processes at these work locations. Compl. ¶ 8. ABM strongly denies that it has violated its contractual obligations or engaged in any form of discriminatory hiring practices. *Id.* ¶ 9. ABM has always taken its obligations to engage in nondiscriminatory hiring practices seriously. *Id.* ¶ 50. And, as a federal contractor, ABM has taken steps to ensure compliance with its contractual obligations and other legal obligations. *Id.*

The DOL administrative proceedings are underway and a DOL ALJ, Defendant Fort, has been assigned to the matter and is currently overseeing the proceedings and issuing interim rulings. Under the current schedule, unless this Court acts quickly to halt the unconstitutional agency proceedings, dispositive motions are due on November 8, 2024, and the administrative adjudicatory hearing is scheduled to begin February 25, 2025. *Id.* ¶ 62. To secure relief in advance of the upcoming dispositive motions deadline, ABM respectfully requests that the Court rule on this preliminary injunction by **October 31, 2024**.

## ARGUMENT

A preliminary injunction is proper when a movant establishes that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). ABM satisfies all four factors.

## I.      ABM Is Likely to Succeed on the Merits of Its Constitutional Claims.

### A.      ABM's Seventh Amendment Claim

The Seventh Amendment preserves the right to trial by jury "[i]n Suits at common law." U.S. Const. amend. VII.  It prohibits an administrative agency's efforts to adjudicate private rights and afford quintessentially legal relief without the safeguards of juries and impartial Article III judges.  *See SEC v. Jarkesy*, 144 S. Ct. 2117, 2139 (2024).  The Seventh Amendment protects the jury's role "as a fact-finding body" and entitles parties "to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).  Congress likewise cannot "confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 334 (2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).  "The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 144 S. Ct. at 2128 (citation omitted).

To resolve this claim, the Court must determine whether (1) the underlying controversy "implicates the Seventh Amendment," and (2) "whether the 'public rights' exception to Article III jurisdiction applies." *Id.* at 2127.  "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* at 2128 (quoting *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 53 (1989)).  Whether a claim is "legal in nature" depends on the nature of the cause of action and the remedy, but the nature of the remedy is "more important." *Id.* at 2129 ("the remedy was the 'more important' consideration" (quoting *Tull v. United States*, 481 U.S. 412, 421 (1987)).  The DOL proceeding against ABM involves claims that are legal in nature under this framework.

8

Here, as in *Jarkesy* itself, "the remedy is all but dispositive." *Jarkesy*, 144 S. Ct. at 2129. OFCCP seeks money damages to compensate for ABM's alleged failure to comply with its government contract's terms. The administrative complaint makes clear in the first paragraph that the administrative "action is brought by OFCCP to enforce the contractual obligations imposed by Executive Order 11246 . . . and the rules and regulations issued pursuant thereto." Based on this alleged contractual breach, the complaint seeks to require ABM to provide "complete relief" to Black and White applicants whom ABM did not hire, including "back pay, interest, front pay retroactive seniority, and all other benefits of employment." These money damages—although labeled "backpay"—cannot be characterized as equitable remedies because the individuals who would receive the compensation were never ABM employees. *See Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 97-98 (1991) (determining that a claim for lost wages was not restitutionary in nature or incident to an equitable order of reinstatement because the pay was for a job for which the claimant had not been hired); *cf.* OFCCP, Federal Contract Compliance Manual, 7C06 (2023), https://www.dol.gov/agencies/ofccp/manual/fccm/7c-types-remedies/7c06-back-pay ("Back pay serves to remedy lost earnings that the victims would have received absent discrimination.").

"Money damages are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129; *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (describing "compensatory damages—monetary relief for all losses . . . sustained as a result of the alleged breach of fiduciary duties" as "the classic form of legal relief"); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) ("We have recognized the 'general rule' that monetary relief is legal[.]" (citation omitted)). And actions to recover money pursuant to contractual obligations have long been considered legal, not equitable in nature. *Great-W. Life & Annuity Ins. Co.* v. *Knudson*, 534

U.S. 204, 210, (2002) ("Petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity."). ABM therefore has a right to have an jury sit as factfinder in an Article III court to decide whether it is liable to OFCCP for breach of contract, as well as the extent of any damages. *See, e.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962).

This conclusion is reinforced by the fact that the cause of action also is legal in nature. A contract dispute between private parties is legal in nature. It does not merely carry "common law soil." *Jarkesy*, 144 S. Ct. at 2137. It completely overlaps with the common law. Breach of contract suits are "quintessentially an action at law." *Great-W. Life*, 534 U.S. at 210; *see also, e.g.*, *Dairy Queen*, 369 U.S. at 477 ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character."). Here, Defendants are clearly seeking compensatory money damages for the alleged breach. But even if that remedy could somehow be characterized as equitable relief, ABM would still be entitled to the jury. Breach of contract actions are legal in nature and require a jury even when the plaintiff seeks a remedy other than money damages. *See Simler v. Conner*, 372 U.S. 221, 223 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues which can be and should have been submitted to a jury under appropriate instructions[.]"). Thus, no matter how Defendants' breach-of-contract remedies against ABM are characterized, the claim is still necessarily legal in nature. For this reason, Defendants' breach-of-contract claim and pursuit of compensatory, money damages from ABM through the DOL agency proceeding is "more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty" and requires a jury. *Tull*, 481 U.S. at 417.

The "public rights exception" does not authorize Defendants' attempt to evade the Seventh Amendment. This exception allows Congress to withdraw certain claims from the cognizance of Article III courts if those claims "historically could have been determined exclusively by the executive and legislative branches." *Jarkesy*, 144 S. Ct. at 2132 (quoting *Stern v. Marshall*, 564 U.S. 462, 484). Defendants bear the burden of showing the public rights exception applies here, and they cannot do so, for at least two reasons.

First, invoking the public rights exception faces a threshold problem. The exception "permit[s] *Congress* to assign certain matters to agencies for adjudication." *Jarkesy*, 144 S. Ct. at 2127 (emphasis added). But Congress has not tried to withdraw these contract claims from the cognizance of Article III courts. There is no statutory provision through which Congress authorized ALJs to adjudicate these claims. That possibility instead arises from the regulatory framework that grew out of a presidential executive order, Executive Order 11246. By regulation, OFCCP chooses between referring claims to DOL for in-house agency proceedings or to DOJ to pursue relief in federal court. 41 C.F.R. § 60-1.26(b)–(c). Defendants cannot show that the public rights exception applies merely because the Executive Branch prefers in-house proceedings.

Second, the "public rights" exception is "an *exception*." *Id.* at 2134 (emphasis in original). "It has no textual basis in the Constitution and must therefore derive instead from background legal principles." *Id.* When this exception applies, it often flows from "from centuries-old rules." *Id.* at 2133-34 (discussing sovereign collection of debts, Indian tribes, immigration penalties, tariffs, and administration of certain public benefits); *id.* at 2147 (Gorsuch, J., concurring) ("Whatever their roots, traditionally recognized public rights have at least one feature in common: a serious and unbroken historical pedigree."). And "[e]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Id.*

(citation omitted).[1]  Here, there is no long pedigree of breach of contract claims being determined exclusively by the executive or legislative branches, so the public rights exception cannot apply. As the Supreme Court emphasized in *Jarkesy*, "matters concerning private rights may not be removed from Article III courts."  144 S. Ct. at 2132.  Here, OFCCP hopes to use its contract claim to provide individualized relief on a classwide basis to make the alleged "discrimination victims whole."  Federal Contract Compliance Manual, *supra*, 7C.  And "the liability of one individual to another" is a "matter[] of private right."  *Stern*, 564 U.S. at 489.  Resolving contractual disputes and awarding contract damages are not among the examples of long-recognized public rights cases that the Supreme Court has identified.  *See Jarkesy*, 144 S. Ct. at 2132-33.

Even before the Supreme Court's *Jarkesy* decision, courts applying the Fifth Circuit's framework (which the Supreme Court largely adopted) have recognized that an Article III jury is required in circumstances where it was even less clear-cut that the claims were legal in nature and implicated private, not public, rights.  *See, e.g.*, *Burgess v. FDIC*, 639 F. Supp. 3d 732, 748 (N.D. Tex. 2022); *SpaceX v. NLRB*, No. 24-40315, Dkt. 40-2 (5th Cir. May 2, 2024) (attached as **Ex. B**)[2]; *see also Jarkesy v. SEC*, 34 F.4th 446, 451-59 (5th Cir. 2022), *aff'd*, 144 S. Ct. 2117 (2024).  After the Supreme Court's decision, it is all the clearer that ABM is entitled to an Article III jury.

### B.    ALJ Removal Protection Claim

ABM is also likely to succeed on its second claim.  Article II vests all executive power in

---

[1] Notably the Supreme Court did not list *Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442, 453 (1977), among the litany of public rights cases firmly rooted in historical precedent, *Jarkesy*, 144 S. Ct. at 2131-34, and indicated it had likely been overruled by *Tull* and *Granfinanciera*.  *See id.* at 2137 nn. 3 & 4.  And if it had not been previously overruled already, Justice Sotomayor in her dissent forcefully argued that *Atlas Roofing* was irreconcilable with the majority opinion.  *See id.* at 2165 (Sotomayor, J., dissenting).  Given the presumption is already in favor of the Article III jury right, this exclusion warrants extreme caution regarding any further expansion of the public rights exception.

[2] In the *SpaceX* case, the Fifth Circuit granted an injunction pending appeal, based on the traditional injunction factors, on the same two structural constitutional claims presented here:  Seventh Amendment and ALJ-removal claims. Regardless of which claim(s) the Fifth Circuit based its injunctive order on, the order supports a finding that ABM is entitled to a preliminary injunction here because ABM presents the same two claims.

the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 591 U.S. 197, 203 (2020) (citation omitted).  The President does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926).  "He must execute them by the assistance of subordinates." *Id.*  But because the executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010). The Constitution requires that the President have the "power to remove—and thus supervise— those who wield executive power on his behalf." *Seila L.*, 591 U.S. at 204.

ABM is likely to succeed on the merits of its constitutional challenge to DOL ALJs' removal protections.  Existing Fifth Circuit precedent requires this conclusion.  In *Jarkesy*, 34 F.4th at 465, the Fifth Circuit held that indistinguishable "statutory removal restrictions" for SEC ALJs "are unconstitutional."   Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [MSPB] on the record after opportunity for hearing.'" *Jarkesy*, 34 F.4th at 464.  And MSPB members themselves "can only be removed by the President for cause." *Id.*; *see* 5 U.S.C. § 1202(d). The SEC ALJs were "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.  But "at least two layers of for-cause protection"—for the ALJs and the MSPB members—unconstitutionally "stand in the President's way." *Id.* at 465.[3]

*Jarkesy* is dispositive.  Its analysis of ALJ removal protections remains binding law within this Circuit. *See, e.g.*, *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *2

---

[3] The Fifth Circuit also determined that SEC commissioners also can be removed only for cause. 34 F.4th at 464.  But its analysis did not turn on the fact that there were *three* layers of removal protection in *Jarkesy*.  Rather, it explained that even "[t]wo layers of for-cause protection" violate the Constitution. *Id.* at 463; *see also id.* at 465.

n.2 (S.D. Tex. July 29, 2024); *Space Expl. Techs. Corp. v. NLRB* ("*SpaceX*"), No. W-24-CV-00203-ADA, 2024 WL 3512082, at *2 n.1 (W.D. Tex. July 23, 2024).  And there is no relevant difference between SEC ALJs and DOL ALJs.  DOL ALJs are officers of the United States like SEC ALJs because they assist in carrying out the President's duties by "conduct[ing] trial-like hearings, receive evidence, examine witnesses, issue subpoenas, rule on procedural and dispositive motions, and render decisions."  *See K&R Contractors*, 86 F.4th at 143[4]; *see also* 5 U.S.C. § 556(c); 29 C.F.R. §§ 18.10-.95.  Even though these activities take a judicial form, they are still exercises of "the 'executive Power,' for which the President is ultimately responsible."  *Arthrex*, 594 U.S. at 17 (citations omitted); *K&R Contractors*, 86 F.4th at 148 ("[A]lthough DOL ALJs perform adjudicative functions, their activities 'are exercises of—indeed, under our constitutional structure they *must be* exercises of—the executive Power,' for which the President is ultimately responsible." (citation omitted)).

Given DOL ALJs' status as "officers" of an executive agency, *K&R Contractors*, 86 F.4th at 148, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions."  *Jarkesy*, 34 F.4th at 464.  Yet the President cannot adequately control the performance of these ALJs' functions because DOL ALJs are insulated from presidential control by two layers of for-cause removal protection.  First, ALJs are removable only for cause, as determined by the MSPB.  5 U.S.C. § 7521(a).  Second, MSPB Members also are removable only for cause—"inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).  The statutes' two layers of removal protection impermissibly restrict presidential authority and so violate Article II.  *See Free Enter. Fund*, 561 U.S. at 492-508; *Jarkesy*, 34 F.4th at 465.  But for these unlawful removal restrictions, the ALJ assigned to ABM's

---

[4] While the Fourth Circuit did not ultimately decide in *K&R Contractors* whether ALJs' removal protections are constitutional, it recognized that the Fifth Circuit had held in *Jarkesy* that they are not.  *See* 86 F.4th at 148.

administrative case would face the prospect of removal by the President based on her conduct during the proceedings.

In line with the Fifth Circuit's holding in *Jarkesy*, courts in this Circuit and elsewhere have concluded likewise when facing removal-protection claims for other agencies' ALJs.  *SpaceX*, 2024 WL 3512082, at *3 (holding plaintiff had shown a likelihood of success on merits of removal-protection challenge for National Labor Relations Board ALJs); *Energy Transfer*, 2024 WL 3571494, at *2 (same); *Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223, at *4 (S.D. Ga. Mar. 25, 2024) ("[T]he Court finds the multilevel protection from removal present for the OCAHO ALJs is contrary to Article II, and contrary to the executive power of the President."). Under binding Fifth Circuit precedent, ABM is likely to prevail on the merits of this claim.

## II.     ABM Will Face Irreparable Harm Without a Preliminary Injunction.

Unless this Court enjoins Defendants from pursuing its claims through an administrative proceeding, ABM will suffer multiple forms of irreparable harm: (1) ABM will be deprived of its Seventh Amendment right to have a jury as factfinder; (2) it will be subject to an "illegitimate" administrative proceeding overseen by an "illegitimate decisionmaker" in violation of its constitutional rights; and (3) it will also suffer economic and reputational harms that result from the unconstitutional proceeding.  ABM seeks to prevent OFCCP from proceeding with the administrative proceeding and adjudicating the breach-of-contract claim when it cannot provide an Article III forum and jury, as ABM is guaranteed by the Seventh Amendment, or a constitutionally compliant decisionmaker under Article II.  Unless this Court grants a preliminary injunction blocking the DOL proceedings, ABM will suffer "harm for which there is no adequate remedy at law."  *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

### A.      Seventh Amendment Harm

As a matter of law, the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury"); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (3d ed. 2023) (where "deprivation of a constitutional right is involved, … most courts hold that no further showing of irreparable injury is necessary").  A Seventh Amendment jury-trial right attaches before the start of the trial.  *See* U.S. Const. amend. VII; *cf.* Fed. R. Civ. P. 38, 39 (procedures for preserving Seventh Amendment jury right before trial).  The question is who should sit as factfinder, regardless of the outcome, over decisions made in the case, or whether compensatory damages are even awarded, because the right is centered on the "jury [acting] as a fact-finding body." *Dimick*, 293 U.S. at 486.  Parties are entitled "to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages.  Both are questions of fact." *Id.*

Here, ABM has a right to have a jury, not an ALJ, act as the factfinder.  Because ABM is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess*, 639 F. Supp. 3d at 749.

The deprivation of ABM's right to a jury in the DOL proceedings is a concrete injury inflicting a specific and irreparable harm that cannot fully be remedied by later vacating the ALJ's order and requiring a do-over of the proceeding in a manner that complies with the Constitution.  ABM is entitled to constitutionally compliant decisionmaker in the first instance.  Having to proceed without a jury outside an Article III court cannot be remedied after the proceeding has

already run its course. *See Ward v. Village of Monroeville*, 409 U.S. 57, 61-62 (1972) (a flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication"). The harm results from participation in the unconstitutional hearing itself and not from any particular decision made by the unconstitutional factfinder.

### B.  Harm from Unconstitutionally Insulated ALJ

In *Axon*, the Supreme Court held that being subjected to unconstitutionally structured agency proceedings is a constitutional injury that cannot be remedied after it has been suffered. ABM's claim is that it is "being subjected to unconstitutional agency authority … by an unaccountable ALJ," which qualifies as "a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191. An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id.* Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* Once the proceeding has concluded, a court cannot remedy that harm: "[a] proceeding that has already happened cannot be undone," and "[j]udicial review … would come too late to be meaningful." *Id.* at 191-92. This reasoning directly applies here and shows, by definition, this injury is irreparable.

The en banc Fifth Circuit has likewise recognized that if a removal claim is "meritorious," the plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control." *Cochran*, 20 F.4th at 212-13; *see also Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on Axon because the plaintiff was likely to prevail on its claim that officers were unlawfully "shielded from

removal"). For these reasons, district courts in this Circuit have found that ALJ-removal protection claims present irreparable injury. *Energy Transfer*, 2024 WL 3571494, at *3 (holding "simply having to appear before an unaccountable ALJ is injury enough" to show irreparable harm); *SpaceX*, 2024 WL 3512082, at *6 (concluding that under *Axon* and *Cochran*, plaintiff had shown it would suffer irreparable harm from proceeding before an unconstitutionally insulated ALJ); *cf. SpaceX v. Bell*, 701 F. Supp. 3d 626, 631 (S.D. Tex. 2023) (citing *Axon* and stating that "if Plaintiff can show that OCAHO ALJs are unconstitutionally insulated from removal, Plaintiff will be harmed by having to proceed before an unaccountable ALJ").

Through this removal-protection claim, ABM is "entitled," at a minimum, to final "declaratory relief" at final judgment "sufficient to ensure that the [contractual] requirements and … standards to which [it is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513. Even if the Court ultimately concluded that ABM was entitled to only declaratory relief at final judgment (as opposed to a permanent injunction), a preliminary injunction is still needed in the interim to prevent the irreparable injury and preserve the status quo so the judiciary can provide meaningful final relief because there is no mechanism for interim declaratory relief before final judgment. *See, e.g.*, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997).

### C.     Economic and Reputational Harms

Finally, while the constitutional injuries are enough to establish irreparable harm on their own, the real-world burdens of the DOL proceedings inflict additional irreparable harm. ABM is suffering, and will continue to suffer, tangible harm in the form of costs and time by its personnel preparing for the unconstitutional agency proceedings, as well as reputational injury arising from the proceedings. *See* Declaration of Paige Tamada ("Tamada Decl.", attached as **Ex. C**), ¶¶ 6-12.

Even if an adverse ALJ decision against ABM were eventually vacated and ABM were to receive a new trial in a proceeding that fully complied with the Constitution, it would be too late to fully repair the significant harm inflicted by the unconstitutional ALJ proceeding. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). The costs from undergoing the unconstitutional proceeding in the first place—including legal fees and time by ABM personnel preparing for and participating in the unconstitutional administrative proceeding, engaging in discovery, and drafting dispositive motions—are likely unrecoverable. *See* Tamada Decl. ¶¶ 7-8. These are not ordinary litigation costs, but rather are costs that arise only because of compelled participation in an unconstitutional agency adjudication. *See Cochran*, 20 F.4th at 209-10 (disagreeing with the government that plaintiff complained only about "mere litigation expense[s]" where the plaintiff "challenges the entire legitimacy of [the] proceedings, not simply the cost and annoyance"). For this reason too, the continuation of the administrative proceeding inflicts irreparable injury on ABM.

## III.   The Balance of Harms and Public Interest Favor a Preliminary Injunction.

ABM satisfies the two remaining injunction factors as well. When, as here, the government is a defendant, the balance of harms and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors tilt strongly in ABM's favor.

First, given ABM's likelihood of success, an injunction would not harm Defendants because "[t]he government suffers no cognizable harm from stopping 'the perpetuation of unlawful agency action.'" *SpaceX*, 2024 WL 3512082, at *7 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)); *see also, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th

604, 618 (5th Cir. 2021) ("Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) [safety standard] is illegitimate.").

For the same reason, an injunction would promote the public interest. *Louisiana*, 55 F.4th at 1022 ("[T]here is generally no public interest in the perpetuation of unlawful agency action." (citation omitted)); *see also BST Holdings*, 17 F.4th at 618 ("The public interest is … served by maintaining our constitutional structure[.]"); *Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."). "It is not in the public interest to have an increasingly expansive Executive Branch that 'slip[s] from the Executive's control, and thus from that of the people.'" *SpaceX*, 2024 WL 3512082, at *7 (quoting *Free Enter. Fund*, 561 U.S. at 499). "Nor is it in the public interest for an agency to infringe upon the constitutional imperative that 'the judiciary remain[] truly distinct from … the executive.'" *Id.* (quoting *Stern*, 564 U.S. at 483).

Moreover, even if the Court permanently enjoins DOL's in-house OFCCP proceedings, that will not eliminate the government's ability to enforce its federal contracts or Executive Order 11246. Even now, the government has a mechanism to bring such contractual claims in normal federal litigation. *See* 41 C.F.R. § 60-1.26(c). An injunction against in-house OFCCP proceedings—whether preliminary or permanent—would not harm the government's legitimate interests.

## CONCLUSION

ABM has carried its burden on all four factors to show a clear and indisputable right to a preliminary injunction. The Court should therefore enjoin Defendants from proceeding any further with DOL case number 2021-OFC-00002 and any other related DOL adjudicative proceeding(s) against ABM pending a final judgment on the merits in this action.

Dated: September 10, 2024

Respectfully submitted,

s/ *Catherine L. Eschbach*

**FOX, WANG & MORGAN P.C.**
John C. Fox (*pro hac vice* forthcoming)
Alexa L. Morgan (*pro hac vice* forthcoming)
Jay J. Wang (*pro hac vice* forthcoming)
Of Counsel
315 University Ave.,
Los Gatos, CA 95030
jfox@foxwangmorgan.com
amorgan@foxwangmorgan.com
jwang@foxwangmorgan.com
Tel.: (408) 844-2350
Fax: (408) 844-2351

**MORGAN LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-in-Charge
Texas Bar No. 24097665
Southern District of Texas Bar No. 3846447
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
Tel: (713) 890-5719
Fax: (713) 890-5001

Michael E. Kenneally (*pro hac vice* forthcoming)
Of Counsel
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
Tel: (202) 739-3000

*Counsel for Plaintiff ABM Industry Groups, LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 9, 2024, counsel for ABM conferred via a call with counsel for Defendants about this motion and confirmed the contents of that call by email that same day.  Counsel for the parties conferred again by phone on September 10, 2024.  They were unable to resolve the motion by the time of filing.

s/ *Catherine L. Eschbach*
Catherine L. Eschbach

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2024, all Defendants will be served with a copy of

this motion by certified mail at the following addresses:

United States Department of Labor
200 Constitution Ave., N.W.
Washington, D.C. 20210


The United States, U.S. Attorney for the Southern District of Texas
c/o Civil Process Clerk, U.S. Attorney's Office
1000 Louisiana St., Suite 2300
Houston, TX 77002

Counsel for Defendants was also served on September 10, 2024, with a copy of this motion

by email at:

Andrea Luby
Senior Trial Attorney
U.S. Department of Labor
luby.andrea@dol.gov
215-861-5128


                                        s/ *Catherine L. Eschbach*
                                        Catherine L. Eschbach

23