# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ABM INDUSTRY GROUPS, LLC, | § | |
| | § | |
| Plaintiff, | § | CASE NO. 4:24-CV-03353 |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| LABOR, a federal administrative agency; *et* | § | |
| *al.*, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Dated: October 1, 2024

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

By: */s/ Lisa Luz Parker*
Lisa Luz Parker, Attorney-in-Charge
Assistant United States Attorney
Texas Bar No. 24099248
Southern District No. 3495931
Shawn Ren
Assistant United States Attorney
Texas Bar No. 24132873
Southern District No. 3892202
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9489
Fax: (713) 718-3303
E-mail: lisa.luz.parker@usdoj.gov
E-mail: shawn.ren@usdoj.gov

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on October 1, 2024, the Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction was filed and served on counsel of record through the Court's CM/ECF system.

/s/ Lisa Luz Parker
Lisa Luz Parker
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................iv

SUMMARY .........................................................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ..........................................................................2

    A.    In Effect Since 1965, Executive Order 11246 Requires Federal Contractors to Abide by Regulations Related to Nondiscrimination in its Hiring Practices ...................................2

    B.    Through the Regulations, Contractors Consent to Administrative Proceedings ...............2

    C.    The Secretary Has the Sole Discretion to Review Findings and Issue Decisions ..............3

    D.    OFCCP Files an Administrative Complaint for Violations of Executive Order 11246 .....3

STANDARD OF REVIEW ..................................................................................................................4

ARGUMENT ........................................................................................................................................5

    I.    ABM Cannot Show a Substantial Likelihood of Success on the Seventh Amendment Claim ..5

    A.    ABM agreed to the administrative proceeding and thus waived any right to a jury trial ....5

    B.    The Seventh Amendment does not apply where, as here, the agency's claim against ABM is equitable in nature. ................................................................................................................8

    C.    Agency adjudication here is consistent with the Seventh Amendment under the public rights exception. ..........................................................................................................................13

    II.    ABM Fails to Show a Substantial Likelihood of Success on the Article II Claim .................16

    A.    ABM fails to show that the removal statutes are connected to a compensable harm. ......16

    B.    On the merits, the proceeding here is distinguishable from that in *Jarkesy*. .......................19

    C.    Preliminary injunctive relief is inappropriate because severance can resolve the threat of appearing before an unconstitutionally insulated ALJ .................................................................20

    III.    ABM Fails to Show a Substantial Threat of Irreparable Harm ...............................................21

    A.    Unable to show a substantial likelihood that it will prevail on the Seventh Amendment claim, ABM's substantial threat of irreparable harm argument fails. ...........................................22

    B.    ABM asserts a substantial threat of irreparable harm on the Article II claim based on a misapplication of the law. ..........................................................................................................22

    C.    ABM's "real-world burdens of the proceedings" fail to show a substantial threat of irreparable harm. .........................................................................................................................23

    IV.    Finally, the Balance of Equities and the Public Interest Factors Weigh Against Granting a Preliminary Injunction ...................................................................................................................24

CONCLUSION ...................................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Anibowei v. Morgan,*
  70 F.4th 898 (5th Cir. 2023) ...................................................................................4

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
  598 U.S. 175, 143 S.Ct. 890 (2023) ...............................................18, 23, 24

*B B Trucking, Inc. v. U.S. Postal Service,*
  406 F.3d 766 (6th Cir. 2005)...................................................................12

*Bank of Am. v. Solis,*
  No. 09-2009 (EGS), 2014 WL 4661287 (D.D.C. July 2, 2014) ...................3

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  591 U.S. 610, 140 S.Ct. 2335 (2020) ..........................................20, 21

*Bartee v. Michelin N. Am., Inc.,*
  374 F.3d 906 (10th Cir. 2004) ...............................................................10

*Benisek v. Lamone,*
  585 U.S. 155, 138 S.Ct. 1942 (2018) .......................................................5

*Citigroup Inc. v. VDN Sys., Inc.,*
  2008 WL 5274091 (S.D.N.Y. Dec. 16, 2008)...........................................11

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
  526 U.S. 687, 119 S.Ct. 1624 (1999) .......................................................10

*Cmty. Fin. Services Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau,*
  51 F.4th 616 (5th Cir. 2022) ...................................................................17

*Coghlan v. Wellcraft Marine Corp.,*
  240 F.3d 449 (5th Cir. 2001) ..........................................................11, 12

*Collins v. Dep't of the Treasury,*
  83 F.4th 970 (5th Cir. 2023) ...................................................................17

*Collins v. Lew,*
  642 F.Supp.3d 577 (S.D. Tex. 2022) .......................................................17

*Collins v. Yellen,*
  27 F.4th 1068 (5th Cir. 2022) ..........................................................16, 17

*Collins v. Yellin,*
  594 U.S. 220, 141 S.Ct. 1761 (2021) ..............................................16, 18

*Contango Operators, Inc. v. United States,*
  No. 4:11-CV-00532, 2011 WL 13130834 (S.D. Tex. Oct. 26, 2011)...........11, 12

*Contractors Ass'n of E. Pa. v. Sec'y of Labor,*
  442 F.2d 159 (3d Cir. 1971)...................................................................24

*Crowell v. Benson,*
  285 U.S. 22, 52 S.Ct. 285 (1932) ....................................................13, 14

*Crown Coat Front Co. v. United States,*
  386 U.S. 503, 87 S.Ct. 1177 (1967) .........................................................7

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
  661 F.2d 328 (5th Cir. 1981)...................................................................22

*Elrod v. Burns,*
  427 U.S. 347, 96 S.Ct. 2673 (1976) .......................................................22

*First Alabama Bank of Montgomery, N.A. v. Donovan,*
  692 F.2d 714 (11th Cir. 1982)...............................................................25

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
   561 U.S. 477, 130 S.Ct. 3138 (2010) ................................................................. 19, 20, 21
*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232, 101 S.Ct. 488 (1980) ............................................................................. 24
*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33, 109 S.Ct. 2782 (1989) ...................................................... 5, 8, 13, 14
*Harris v. G4S Secure Sols. (USA), Inc.*,
   No. 4:22-CV-02837, 2023 WL 2090293 (S.D. Tex. Feb. 16, 2023) ........................... 6
*In re Cnty. of Orange*,
   784 F.3d 520 (9th Cir. 2015) ......................................................................................... 6
*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ......................................................................................... 4
*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) ................................................................................. passim
*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
   103 F.4th 748 (10th Cir. 2024) .............................................................................. 18, 23
*League of United Latin Am. Citizens v. Abbott*,
   601 F.Supp.3d 147 (W.D. Tex. 2022) ........................................................................ 24
*Leasing Serv. Corp. v. Crane*,
   804 F.2d 828 (4th Cir. 1986) ......................................................................................... 6
*Lewis v. S.L. & E., Inc.*,
   831 F.2d 37 (2d Cir. 1987) .......................................................................................... 12
*Lodge No. 1424 v. NLRB*,
   362 U.S. 411, 80 S.Ct. 822 (1960) .............................................................................. 25
*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ..................................................................................... 11
*Morrison v. Morgan Stanley Properties*,
   No. 9:06-CV-80751, 2007 WL 2316495 (S.D. Fla. Aug. 9, 2007) ............................. 14
*Murray's Lessee v. Hoboken Land & Improvement Co.*,
   59 U.S. 272, 15 L.Ed. 372 (1855) ............................................................................... 13
*Myers v. Bethlehem Shipbuilding Corp.*,
   303 U.S. 41 (1938) ....................................................................................................... 23
*Nken v. Holder*,
   556 U.S. 418, 129 S.Ct. 1749 (2009) ..................................................................... 4, 24
*Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*,
   373 F.2d 136 (8th Cir. 1967) ......................................................................................... 6
*Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*,
   584 U.S. 325, 138 S.Ct. 1365 (2018) .......................................................................... 13
*Perkins v. Lukens Steel Co.*,
   310 U.S. 113 (1940) ....................................................................................................... 6
*Pizza Hut LLC v. Pandya*,
   79 F.4th 535 (5th Cir. 2023) .................................................................................. 6, 7, 8
*Richmond Hosiery Mills v. Camp*,
   74 F.2d 200 (5th Cir. 1934) ......................................................................................... 21
*Sampson v. Murray*,
   415 U.S. 61, 94 S.Ct. 937 (1974) ................................................................................ 24
*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) ..................................................................................................... 21

*Seaboard Lumber Co. v. United States,*
   903 F.2d 1560 (Fed. Cir. 1990) ........................................................................ 6, 7

*SEC v. Jarkesy,*
   144 S.Ct. 2117, 219 L.Ed.2d 650 (2024) ....................................................... passim

*Seila Law LLC v. Consumer Financial Protection Bureau,*
   591 U.S. 197, 140 S.Ct. 2183 (2020) .................................................. 18, 20, 21

*Burgess v. FDIC,*
   639 F.Supp.3d 732 (N.D. Tex. 2022) .................................................... 22, 23

*Siegel v. Goldstein,*
   No. 20-3547, 2022 WL 2234952 (3d Cir. Jun. 22, 2022) .................................... 12

*Space Expl. Techs., Corp. v. Bell,*
   701 F. Supp. 3d 626 (S.D. Tex. 2023)

*Spencer v. Wal-Mart Stores, Inc.* .......................................................................... 21
   469 F.3d 311 (3d Cir. 2006) ............................................................................ 10

*Stern v. Marshall,*
   564 U.S. 462, 131 S.Ct. 2594 (2011) ............................................................... 13

*U.S. Brewers Ass'n, Inc. v. EPA,*
   600 F.2d 974 (D.C. Cir. 1979) ............................................................................ 8

*United States v. Arthrex, Inc.,*
   594 U.S. 1, 141 S.Ct. 1970 (2021) ................................................................... 14

*United States v. Joseph A. Holpuch Co.,*
   328 U.S. 234, 66 S.Ct. 1000 (1946) .................................................................... 7

*United States v. New Orleans Pub. Serv., Inc.,*
   553 F.2d 459 (5th Cir. 1977) ............................................................................ 24

*United States v. Wunderlich,*
   342 U.S. 98, 72 S.Ct. 154 (1951) ...................................................................... 7

*W & T Offshore, Inc. v. Bernhardt,*
   946 F.3d 227 (5th Cir. 2019) .............................................................................. 9

*Wantou v. Wal-Mart Stores Texas, L.L.C.,*
   23 F.4th 422 (5th Cir. 2022) ............................................................................. 10

*West v. Gibson,*
   527 U.S. 212 (1999) ........................................................................................... 9

*West v. Nabors Drilling USA, Inc.,*
   330 F.3d 379 (5th Cir. 2003) ............................................................................ 10

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7, 129 S.Ct. 365 (2008) ....................................................................... 4

*Wright v. City of Ithaca,*
   633 F.App'x 63 (2d Cir. 2016) ......................................................................... 15

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.,*
   235 F.3d 1184 (9th Cir. 2000) .......................................................................... 12

## Statutes

28 U.S.C. § 1331 ................................................................................................... 18

40 U.S.C. § 121(a) ................................................................................................ 15

**Rules, Regulations, and Other Authorities**

41 C.F.R. § 60-1.26 ................................................................................................. 3, 6, 7, 10

41 CFR § 60-1.4 ............................................................................................................ 3, 14

74 Fed. Reg. 58,834 ........................................................................................................... 2

16 Fed. Reg. 12303 ............................................................................................................ 2

18 Fed. Reg. 4899 .............................................................................................................. 2

26 Fed. Reg. 1977 .............................................................................................................. 2

30 Fed. Reg. 12319 ............................................................................................................ 2

61 Fed. Reg. 19989 ............................................................................................................ 3

85 Fed. Reg. 13186 ...........................................................................................................20

85 Fed. Reg. 30608 ...........................................................................................................20

Exec. Order No. 11246 ................................................................................................passim

Exec. Order No. 10308 ........................................................................................................ 2

Exec. Order No. 10479 ........................................................................................................ 2

Exec. Order No. 10925 ........................................................................................................ 2

*Assault on the Employment at Will Doctrine: Management Considerations,*

48 Mo. L. Rev. 855 (1983) ................................................................................................14

**SUMMARY**

ABM Industry Groups, LLC ("ABM"), brings this action to challenge an administrative proceeding that has been pending for over three years and brought against it by the Office of Federal Contract Compliance Programs ("OFCCP"), a Department of Labor agency. Specifically, ABM asserts two constitutional challenges in support of its preliminary injunction motion (the "Motion").

First, although the administrative proceeding only seeks equitable relief, ABM claims that the proceeding violates its Seventh Amendment right to a jury trial. But the Seventh Amendment does not apply to a proceeding seeking injunctive relief and back pay for affected applicants. Contrary to ABM's construal of the proceeding as the sort of rote breach-of-contract action that is historically tried in courts of law, the agency is in fact seeking to enforce compliance with nondiscrimination provisions contained in Executive Order 11246 ("EO 11246") and its regulations. Thus, the administrative proceeding here is not analogous to the "suits at common law" to which a jury right attaches nor exclusively within the prerogative of the judiciary under Article III.

Second, ABM asserts that the provisions for the removal of the OFCCP Administrative Law Judges ("ALJs") and the members of the Administrative Review Board ("ARB") are unconstitutional. But ABM fails to show the requisite connection between these provisions and any harm it has suffered. ABM is also wrong on the merits, as the President retains sufficient control over the ALJs such that there is no constitutional infirmity. Thus, there is no substantial likelihood that ABM will prevail on the merits of either claim.

Finally, the equities and public interest here are themselves sufficient to deny an injunction. ABM does not explain why it has waited over three years to raise constitutional challenges to the OFCCP proceeding that it has been actively defending. And OFCCP's enforcement of EO 11246 has strong public interest concerns in furthering the Government's policy to prohibit employment discrimination through its federal contractors. But a preliminary injunction would halt OFCCP's

effective enforcement despite ABM agreeing to be subject to EO 11246 and the related regulations

when it became a federal contractor over 10 years ago. Thus, the Motion should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

### A.  In Effect Since 1965, Executive Order 11246 Requires Federal Contractors to Abide by Regulations Related to Nondiscrimination in its Hiring Practices

In 1965, President Lyndon B. Johnson issued EO 11246, forbidding federal government

contractors and subcontractors from engaging in certain discriminatory employment practices. 30 Fed.

Reg. 12,319 (Sept. 24, 1965). The EO was signed just a year after passage of the Civil Rights Act and

followed previous executive orders from Presidents Truman, Eisenhower, and Kennedy that extended

such requirements to apply to most government contractors. *See* Exec. Order No. 10308, 16 Fed. Reg.

12303 (Dec. 6, 1951); Exec. Order No. 10479, 18 Fed. Reg. 4899 (Aug. 18, 1953); Exec. Order No.

10925, 26 Fed. Reg. 1977 (Mar. 8, 1961). Under Part II of the EO, contractors and subcontractors are

barred from discriminating because of race, color, religion, sex, sexual orientation, gender identity, or

national origin. EO 11246 § 202(1). The EO further delegates the responsibility for administering and

enforcing Part II to the Secretary of Labor (the "Secretary"). *Id*; *see also id.* § 205. This includes the

authority to "hold such hearings, public or private, as the Secretary may deem advisable for

compliance, enforcement, or educational purposes." *Id.* § 208.

### B.  Through the Regulations, Contractors Consent to Administrative Proceedings

To enforce EO 11246, the Secretary has delegated the authority to promulgate regulations to

the Director of OFCCP, an agency responsible for administering and enforcing various equal

employment laws, such as the EO. *See* Secretary's Order 7-2009; 74 Fed. Reg. 58,834 (Nov. 13, 2009);

*see also* EO 11246 § 401. As part of its agreement to a government contract, a contractor agrees to

"comply with all provisions of [EO 11246], and of the rules, regulations, and relevant orders of the

Secretary of Labor." EO 11246 § 202(5). The regulations, in turn, provide procedures for

administrative enforcement proceedings to be conducted under the control and supervision of the Solicitor of Labor. 41 C.F.R. § 60-1.26(b)(2).

### C.   The Secretary Has the Sole Discretion to Review Findings and Issue Decisions

OFCCP begins an enforcement proceeding by filing a complaint with the Office of Administrative Law Judges. *Id.* § 60-1.26(b)(2); 61 Fed. Reg. 19,989 (May 3, 1996). An ALJ oversees the proceeding, which may include discovery, motions practice, and a hearing. *Id.* §§ 60-30.5–60-30.24. Following the proceedings, the ALJ issues recommended findings, conclusions, and a decision. *Id.* § 60-30.27. Those recommendations and the record are certified to the ARB to which the parties may submit exceptions. *Id.* §§ 60-30.27, 60-30.28. After the time for filing exceptions expires, the ARB makes a decision, on the basis of the record, which generally becomes the administrative order. *Id.* § 60-30.30.

However, either by petition from a party and ARB recommendation or by the Secretary's sole discretion, the Secretary may review the ARB's decision and issue her own decision. Secretary's Order 01-2020(6)(b)-(c). In other words, the Secretary can override ARB's decision. Under either scenario, the Secretary's decision is the final action by DOL and is binding precedent on all DOL employees and in all DOL proceedings involving the same issue or issues. *Id.* at (6)(c)(3). The agency's final administrative order, whether issued by the Secretary or by the ARB, is then subject to review under the Administrative Procedure Act by a federal district court. *See, e.g.*, *Bank of Am. v. Solis*, No. 09-2009 (EGS), 2014 WL 4661287, *3 (D.D.C. July 2, 2014) (APA challenge to ARB's final decision).

### D.   OFCCP Files an Administrative Complaint for Violations of Executive Order 11246

ABM is a federal contractor providing cleaning and janitorial services to the Federal Government. ECF 1, ¶ 51; ECF 7-1, ¶ 5. To become a federal contractor, ABM agreed to the requirements of EO 11246 and the Secretary's rules and regulations. *See* ECF No. 1, ¶ 53; ECF No. 7-1, ¶ 12; 41 CFR § 60-1.4. On September 15, 2021, OFCCP filed an administrative action against

3

ABM, subsequently amended on March 15, 2022, which alleged that ABM violated the nondiscrimination provisions of EO 11246 and the related regulations. *See* ECF No. 7-1. OFCCP claims that three ABM branches engaged in racially discriminatory hiring practices, favoring Hispanic applicants over both Black and white applicants, as well as other violations.[1] *Id.* ¶¶ 18–46. OFCCP's administrative complaint against ABM is pending before ALJ Willow Eden Fort. ECF No. 1, ¶ 61. No dispositive rulings have been issued. *Id.* ¶ 62.

During the pendency of the OFCCP proceeding, on September 9, 2024, ABM filed this action to challenge the proceeding under the Seventh Amendment and Article II of the Constitution, and almost concurrently, filed the instant motion for a preliminary injunction. ECF Nos. 1, 7.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365 (2008) (citation omitted). A plaintiff must establish "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), cert. denied, No. 23-199 (U.S. Jan. 8, 2024) (citation omitted). The moving party bears the burden of proving each element. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). Harm to the movant must be "likely" and not a mere possibility. *Winter*, 555 U.S. at 22. And the third and fourth factors, harm and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct.

---

[1] OFCCP additionally found that ABM "failed to preserve and maintain its personnel and employment records, failed to conduct adverse impact analyses, and failed to develop an auditing system, thereby violating the Executive Order and its implementing regulations." ECF No. 7-1 at ¶¶ 18, 47–50.

1749 (2009); *see also Benisek v. Lamone*, 585 U.S. 155, 158, 138 S.Ct. 1942 (2018) (per curiam) (affirming preliminary injunction denial where "the balance of equities and the public interest tilted against" an injunction, even if "plaintiffs were likely to succeed on the merits").

## ARGUMENT

### I.   ABM Cannot Show a Substantial Likelihood of Success on the Seventh Amendment Claim

The Seventh Amendment provides that "the right of trial by jury shall be preserved" in "suits at common law." U.S. Const. amend. VII. ABM attempts to avail itself of this right despite that it contractually agreed to the administrative forum when it sought to be a government contractor. Moreover, even applying the Seventh Amendment, as the Supreme Court explained in *SEC v. Jarkesy*, 144 S.Ct. 2117, 219 L.Ed.2d 650 (2024), the term "common law" stands in contradistinction to suits which arise under equity jurisdiction, and the Seventh Amendment extends only to claims which are "legal in nature." *Id.* at 2128 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53, 109 S.Ct. 2782 (1989)). Here, the present administrative proceeding sounds in equity. Finally, even where a suit does arise under the common law and is legal in nature, adjudication by an administrative agency is nevertheless consistent with the Seventh Amendment where the "public rights" exception applies. *Id.* at 2131. Despite ABM's characterization claiming otherwise, there are public rights implicated here, where the Government is enforcing nondiscrimination requirements imposed on its contractors. Thus, there is no substantial likelihood of success.

#### A.   ABM agreed to the administrative proceeding and thus waived any right to a jury trial.

As a threshold matter, ABM cannot establish a substantial likelihood of success on its Seventh Amendment claim because even assuming ABM would otherwise have a right to a jury trial, it has waived that right by agreeing to the administrative forum. It is well-settled that when entering into agreements with contractors, the Government wields extensive authority to "determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases."

*Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940) (citations omitted). In exercise of this authority, the Government has mandated that contractors must comply with not only any substantive nondiscrimination requirements, but also the Secretary's "rules, regulations, and relevant orders." EO 11246 § 202(5). These regulations in turn unmistakably provide for "[a]dministrative enforcement proceedings [to] be conducted under the control and supervision of the Solicitor of Labor." 41 C.F.R. § 60-1.26(b)(2). Having voluntarily chosen to accept these requirements, ABM now challenges a proceeding that it agreed to. For this reason alone, ABM's challenge fails.

It is an unspectacular, well-accepted principle that the right to a jury trial may be waived by contract; accordingly, ABM's Seventh Amendment challenge can be decided on the axiomatic understanding that the terms of government contracts may set forth and require adjudicative processes which, when agreed upon, are fully valid notwithstanding that such processes might not be the default absent those terms. *See, e.g., Harris v. G4S Secure Sols. (USA), Inc.*, No. 4:22-CV-02837, 2023 WL 2090293, at *1 (S.D. Tex. Feb. 16, 2023) (Lake, J.) (citing *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986)); *Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 373 F.2d 136, 142 (8th Cir. 1967) ("[I]t is . . . well[-]settled that a right to a jury trial may be waived [by contract]."); *In re Cnty. of Orange*, 784 F.3d 520, 523 (9th Cir. 2015) (explaining that federal law permits contractual waivers of the right to a jury trial); *Pizza Hut LLC v. Pandya*, 79 F.4th 535, 538 (5th Cir. 2023) ("The Seventh Amendment right to a jury trial is unassailable but not unwaivable. Courts have long honored parties' agreements to waive the jury right[.]").

This principle is no less ingrained in the government contractor context, as a "voluntary waiver of both Article III and Seventh Amendment rights, *as a matter of both private or government contract law*, suffers from no inherent constitutional or legal infirmity." *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1564 (Fed. Cir. 1990) (emphasis added). *Seaboard* is particularly on point, where the Federal Government brought suit against its contractors—timber companies—and the parties' contracts

6

contained a disputes clause providing that a claim by the government against the contractor "shall be subject to a decision by the contracting officer," and the contractor could appeal either to "the appropriate Board of Contract Appeals" or to "the United States Claims Court, an Article I court[.]" *Id.* at 1562. Rejecting the timber companies' argument that they were entitled to a jury trial, the Federal Circuit explained that "[g]overnment contractors long have been held to be bound by a provision vesting dispute resolution in a nonjury/non-Article III forum." *Id.* at 1564 (citation omitted). Indeed, the Supreme Court has repeatedly endorsed contracts which provide for administrative, non-Article III proceedings. *See, e.g.*, *Crown Coat Front Co. v. United States*, 386 U.S. 503, 87 S.Ct. 1177 (1967); *United States v. Joseph A. Holpuch Co.*, 328 U.S. 234, 66 S.Ct. 1000 (1946); *United States v. Wunderlich*, 342 U.S. 98, 72 S.Ct. 154 (1951). For example, in *Holpuch*, a contractor agreed to terms setting forth an administrative process before suing in federal court. 328 U.S. at 235–36. Holding that the contractor was subject to the administrative process, the Supreme Court stated that the contract clause was "a clear, unambiguous provision applicable at all times and binding on all parties to the contract[,]" and "[n]o court is justified in disregarding its letter or spirit."[2] *Id.* at 239.

The appropriate inquiry in such contractual agreements is thus not whether the right to a jury can be waived (it decidedly can) or whether ABM waived it (ABM decidedly did),[3] but rather if there is reason to think that the waiver was not "knowing or voluntary." *Pizza Hut*, 79 F.4th at 544. In the Fifth Circuit, courts consider this question under the totality of the circumstances, generally applying four non-exhaustive factors: (1) whether both parties had an opportunity to negotiate the terms of the agreement, (2) whether the provision waiving jury trial was conspicuous, (3) the relative bargaining

---

[2] While these cases did not arise in the context of a Seventh Amendment challenge, the Supreme Court's wide acceptance of these contractual stipulations is illustrative of Defendants' earlier discussion and the well-settled principle that such contractual agreements do not inherently present Seventh Amendment concerns.

[3] ABM does not dispute, nor could it, that it agreed to comply with the Secretary's "rules, regulations, and relevant orders," which includes being subject to "[a]dministrative enforcement proceedings [to] be conducted under the control and supervision of the Solicitor of Labor." 41 C.F.R. § 60-1.26(b)(2).

power of the parties, and (4) the business acumen or professional experience of the party opposing

the waiver. *Id.* Nothing in this case indicates that ABM did not enter the contract knowingly or

voluntarily; ABM is a sophisticated party, the terms for contracting with the Government were clear,

and ABM was not forced to do anything; if it did not wish to be subject to the terms of the contract,

it simply could have elected not to enter into the contract. ABM cannot obtain the benefits of

contracting with the Government while evading the contract's conditions that it deems undesirable.

"It is settled that the federal government may exact, from those with whom it does business,

compliance with standards or requirements different from those found in the marketplace generally."

*U.S. Brewers Ass'n, Inc. v. EPA*, 600 F.2d 974, 984 (D.C. Cir. 1979). A ruling in favor of ABM would

defy well-established law that the Government and a federal contractor can agree to administrative

proceedings and would, as a result, open the floodgates for all varieties of litigants to challenge

administrative forums to which they already agreed through contract. As illustrated by the foregoing

law and analysis, a contractor cannot sustain an attack on the constitutionality of an agency-prescribed

adjudicative process in the unique instance where, as is the case here, the contractor contractually

consented to that process. In light of this agreement, the OFCCP proceeding does not present any

Seventh Amendment issues.

**B.  The Seventh Amendment does not apply where, as here, the agency's claim against ABM is equitable in nature.**

Even if contractual consent to the administrative proceeding does not dispose of the Seventh

Amendment claim, ABM does not have a right to a jury trial. It is settled law that the Seventh

Amendment has no application to cases in equity, such as the OFCCP proceeding. *See Granfinanciera*,

492 U.S. at 41 ("We have consistently interpreted the phrase 'Suits at common law' to refer to suits in

which legal rights were to be ascertained and determined, in contradistinction to those where equitable

rights alone were recognized, and equitable remedies were administered.") (citation omitted). In

*Jarkesy*, the Supreme Court informed that in determining "whether a suit is legal in nature," the relevant

8

inquiry is to "the cause of action and the remedy it provides[,]" with the remedy being "the more important consideration." 144 S.Ct. at 2129 (internal quotation marks omitted). Both inquiries here illustrate why the proceeding at issue is equitable, not legal, in nature.

### 1.   Unlike in *Jarkesy*, the proceeding here seeks only equitable relief.

OFCCP sets forth six prayers for relief in the operative administrative complaint against ABM, all primarily forms of injunctive relief and specific performance.[4] *See* ECF No. 7-1 at 14–15. ABM challenges only one form of relief: that ABM provide to affected Black and white applicants "back pay, interest, front pay[,] retroactive seniority, and all other benefits of employment resulting from its discriminatory failure to hire them." ECF 1, p.4. Just like the other forms of requested relief, the monetary components of that request are also equitable in nature under well-established law.

As the Supreme Court explained in *Jarkesy*, "monetary relief can be legal or equitable." 144 S.Ct. at 2129. "What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to restore the status quo." *Id.* (cleaned up). In other words, civil sanctions that "can only be explained as . . . serving either retributive or deterrent purposes" are legal remedies, whereas remedies that "serve a remedial purpose"—such as "order[ing] a defendant to return unjustly obtained funds"—are equitable. *Id.* (quotation omitted). In this case, OFCCP makes its demand pursuant to applicable regulations which permit it to "seek back pay *and other make whole relief for victims* of discrimination identified during a complaint investigation or compliance evaluation." 41 C.F.R. § 60-1.26(a)(2) (emphasis added). Neither EO 11246 nor the applicable regulations permit OFCCP to seek any civil monetary penalties or any other form of damages. The requested relief is equitable in both form and substance; in form, it is expressly referred

---

[4] ABM does not contest, nor could it, that injunctive relief and specific performance constitute equitable remedies. *See, e.g., W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 240 (5th Cir. 2019) (explaining injunctive relief and specific performance are "equitable remedies" and " are typically affirmatively sought and obtained when available legal remedies cannot adequately redress the injury." (cleaned up)); *West v. Gibson*, 527 U.S. 212, 217 (1999) (discussing remedies such as reinstatement, hiring, and back pay as equitable).

to as "make whole relief," and the regulations explicitly refer to back pay as a form of "equitable relief." *Id.* § 60-1.26(d). And in substance, every cent recovered goes straight to the offender to the victims to compensate them for the unlawful discrimination.

In *Jarkesy*, the Securities and Exchange Commission ("SEC") civil monetary penalties were just that—penalties. The Supreme Court concluded that those penalties were legal rather than equitable because they were tied to "the perceived need to punish the defendant rather than to restore the victim," and the SEC was "not obligated to return any money to victims." 144 S.Ct. at 2129–30. Here, OFCCP pursues back pay and other forms of monetary relief as "make whole relief for victims of discrimination" and as stated in its administrative complaint, the monetary remedies are specifically and entirely to provide relief to those victims. ECF No. 7-1 at 14–15; 41 C.F.R. § 60-1.26(a)(2).

Indeed, beyond the Supreme Court's controlling distinction in *Jarkesy*, the Fifth Circuit has repeatedly instructed, including in the employment discrimination context, that restorative relief such as "back pay and front pay are equitable remedies determined by the court." *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 430 (5th Cir. 2022) (explaining that back pay and front pay are equitable remedies and therefore need not be resolved by a jury); *see also West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 394 (5th Cir. 2003) (same, but only addressing back pay). Courts have unwaveringly categorized back pay as equitable relief where the text of the statute itself does so, as is the case here with DOL's regulations. *See, e.g., Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 (3d Cir. 2006) (relying on the language in Title VII itself which discussed back pay as equitable relief); *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 910 (10th Cir. 2004) (same, but under the ADA).

In sum, a careful review of the relevant regulations and caselaw informs that with respect to the OFCCP proceeding, the remedy is plainly equitable and does not implicate the Seventh Amendment. *See City of Monterey v. Del Monte Dunes at Monterey*, Ltd., 526 U.S. 687, 719, 119 S.Ct. 1624 (1999) ("It is settled law that the Seventh Amendment does not apply in [suits seeking only equitable

relief].”). And because “the remedy [i]s the ‘more important’ consideration,” it can (and should here) be “all but dispositive.” *Jarkesy*, 144 S.Ct. at 2129. Even if the nature of an action is “arguably legal”— which this one, as discussed below, is not—“the right to a jury does not inhere” when the party seeks only “equitable remedies.” *Citigroup Inc. v. VDN Sys., Inc.*, 2008 WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008). Just as this inquiry into remedy “effectively decide[d]” the Seventh Amendment issue in *Jarkesy*, 144 S.Ct. at 2130, the remedy decides the issue here.

### 2. The OFCCP proceeding alleging nondiscrimination violations is equitable in nature and not based in common law.

Although “the more important consideration” of the remedy should resolve the inquiry here, review of the cause of action also “confirms that conclusion.” *Id.* ABM argues that the cause of action in the administrative complaint is a breach-of-contract claim, which is “legal in nature and require[s] a jury[.]” ECF No. 7 at 16. As an initial matter, Defendants dispute that the administrative proceeding is at core a breach-of-contract claim. In a typical breach-of-contract action, “[b]enefit of the bargain damages are the very essence” of such claims and are “supposed to place the injured party as nearly as possible in the position that he would have occupied had the defaulting party performed the contract.” *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 453–54 (5th Cir. 2001) (citations omitted). If this principle does not seem particularly applicable in the instant case, that is because it is not.

Whether an action is “at its essence a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).” *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (cleaned up); *see Contango Operators, Inc. v. United States*, No. 4:11-CV-00532, 2011 WL 13130834, at *2 (S.D. Tex. Oct. 26, 2011) (Lake, J.) (quoting *Megapulse*, 672 F.2d at 968). The critical inquiry in this analysis “is whether, despite the presence of an underlying contract between the parties, the rights asserted that form the basis of the claims are founded on the contract or on another ground, such as the Constitution or a federal

statute." *Contango*, 2011 WL 13130834, at *3 (Lake, J.) (quoting *B B Trucking, Inc. v. U.S. Postal Service*, 406 F.3d 766, 774 (6th Cir. 2005)).

In that vein, the OFCCP proceeding is a make-whole civil enforcement action initiated by the Government against a private party, to uphold critical United States policy interests, as determined by the President, and memorialized in a detailed regulatory equal employment opportunity scheme. OFCCP does not sue for the benefit of its bargain, or otherwise to place itself in a certain position. *See Coghlan*, 240 F.3d at 453–54. Rather than seek the type of compensatory damages quintessential in a breach-of-contract claim, OFCCP exclusively seeks regulatorily prescribed equitable relief to make whole victims of unlawful practices allegedly engaged in by ABM under EO 11246 and its regulations. In *Jarkesy*, the Court found "an enduring link" between federal securities fraud and common law fraud, "its common law 'ancestor.'" 144 S.Ct. at 2130 (citation omitted). But there is no such "enduring link" between the present civil rights enforcement proceedings, including the regulatory scheme and its prescribed remedies—which derive from an affirmative policy objective to advance nondiscrimination in hiring—and a traditional breach-of-contract claim.

Finally, even if the enforcement proceedings are viewed from a breach-of-contract lens, it is not the case that the claims are inherently legal; rather, just as for any other action, the nature of a breach-of-contract action turns on the relief sought. *See, e.g.*, *Siegel v. Goldstein* No. 20-3547, 2022 WL 2234952, at *4 (3d Cir. Jun. 22, 2022) (explaining that "whether a party brings a legal or equitable breach of contract claim turns on the type of remedy sought," so "a breach of contract claim for monetary damages is an action at law, [and] a breach of contract claim seeking equitable relief is an action in equity."); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1194 (9th Cir. 2000) ("The legal or equitable nature of a cause of action is ordinarily determined by the remedy sought."); *Lewis v. S.L. & E., Inc.*, 831 F.2d 37, 39 (2d Cir. 1987) (same). This interplay is precisely why the Supreme Court in *Jarkesy* observed that the nature of the remedy is more important than the cause of

action: the former informs the latter. Thus, even if the OFCCP proceedings are properly construed as a breach-of-contract action, the nature of the action is still equitable because its remedies are equitable. This proceeding thus lies wholly outside the ambit of the Seventh Amendment right to a jury trial.

### C. Agency adjudication here is consistent with the Seventh Amendment under the public rights exception.

Even if the Court holds that the OFCCP proceeding is legal in nature, those proceedings are consistent with the Seventh Amendment because they involve the kind of "public rights" for which "no involvement by an Article III court in the initial adjudication is necessary." *Jarkesy*, 144 S.Ct. at 2132. Generally, suits at common law within the bounds of federal jurisdiction cannot be "withdraw[n] from judicial cognizance." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284, 15 L.Ed. 372 (1855). But one longstanding exception is cases involving "public rights," which are matters that "historically could have been determined exclusively by the executive and legislative branches, even when they were presented in such form that the judicial power was capable of acting on them." *Jarkesy*, 144 S.Ct. at 2132 (cleaned up). In these cases, "the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Granfinanciera*, 492 U.S. at 53–54. As the Supreme Court has repeatedly observed, the distinction between public and private rights has long been imprecise and confusing. *See Jarkesy*, 144 S.Ct. at 2133; *Oil States Energy Servs., LLC v. Greene's Energy Group, LLC,* 584 U.S. 325, 334, 138 S.Ct. 1365 (2018). But the distinction is not without guideposts; in 2011, the Supreme Court in *Stern v. Marshall* explained that the public rights exception applies "to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert Government agency is deemed essential to a limited regulatory objective within the agency's authority." 564 U.S. 462, 490, 131 S.Ct. 2594 (2011). And in the case of *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285 (1932), the Supreme Court explained that while "private rights" are implicated in suits between private parties, public rights are implicated in suits "which arise between the Government and persons subject to its authority in connection with the performance of

13

the constitutional functions of the executive or legislative departments." *Id.* at 50. Each of these considerations is satisfied here.

The OFCCP claims derive from a detailed federal regulatory scheme setting forth a comprehensive list of provisions which bind federal contractors. *See* EO 11246; 41 C.F.R. § 60-1.4. The scheme is set forth by an expert government agency, OFCCP, with the specific, limited regulatory directive of "hold[ing] those who do business with the federal government (contractors and subcontractors) responsible for complying with the legal requirement to take affirmative action and not discriminate[.]" *See About Us*, OFCCP, https://www.dol.gov/agencies/ofccp/about. Unlike a case involving private rights between private parties, the Government brings the administrative claims against a contractor bound by its regulations, in fulfilling the Executive Branch's constitutional duty to take care that the laws are faithfully executed. *See, e.g., United States v. Arthrex, Inc.*, 594 U.S. 1, 6, 141 S.Ct. 1970 (2021) (quoting U.S. Const. art. II, § 3)).

In addition to each of these considerations, the nature of the action also supports finding it implicates a public right. In both *Jarkesy* and *Granfinanciera*, the Supreme Court looked to "the substance of the suit" to ascertain whether it could be withdrawn from an Article III court. In *Granfinanciera*, critical to the analysis—and to the Supreme Court's rejection of non–Article III adjudication—was that the matter was a fraudulent conveyance action "subject to a suit at common law," with a remedy "traditionally provided by law courts." *Granfinanciera*, 492 U.S. at 49, 56. In contrast, while in *Granfinanciera* the types of actions "to recover preferential or fraudulent transfers were often brought at law in late 18th-century England," *id.* at 43, suits of employment discrimination were not cognizable at common law.[5] *See, e.g., Morrison v. Morgan Stanley Properties*, No. 9:06-CV-80751,

---

[5] Before various legislation in the late 1900s, employment at-will had been the default rule; thus, taking a broad time horizon of American employment jurisprudence, employment discrimination claims are but a fairly novel concept. *See, e.g.,* Timothy J. Heinsz, *Assault on the Employment at Will Doctrine: Management Considerations*, 48 Mo. L. Rev. 855, 855–56 (1983).

2007 WL 2316495, at *3 (S.D. Fla. Aug. 9, 2007) (explaining that "[e]mployer discrimination does not exist at common law" and "is a claim created by statute"); *Wright v. City of Ithaca*, 633 F.App'x 63, 66 (2d Cir. 2016) (same). As discussed above, OFCCP is not seeking "civil penalties" or any other sort of "punitive remedy" that the Supreme Court in *Jarkesy* found "could only be enforced in courts of law." 144 S.Ct. at 2136. Thus, application of the public rights exception would not present any danger of running roughshod over a traditionally common law cause of action.[6]

Finally, ABM wrongly contends that the public rights exception cannot apply because the proceeding here stems from EO 11246 and the regulatory framework, rather than a statute passed by Congress. First, it is not true that the proceeding must stem from a congressional statute, as "[t]he public-rights doctrine is grounded in a historically recognized distinction between matters that could be conclusively determined by the *Executive and Legislative Branches* and matters that are inherently judicial." *Jarkesy v. SEC*, 34 F.4th 446, 458 (5th Cir. 2022) (cleaned up) (emphasis added) ("*Jarkesy I*"). What matters is that the adjudication does not encroach on Article III, not which of "the political Branches of Government" plays more of a role. *Id.* (quotation omitted). And second, this argument ignores that there is congressional authority: the Procurement Act, which authorizes EO 11246 by empowering the President to "prescribe policies and directives that the President considers necessary to carry out" the Act's provisions. 40 U.S.C. § 121(a).

In sum, even if the Seventh Amendment applies here, the Court should nevertheless hold that the public rights exception removes the OFCCP proceeding from exclusive Article III jurisdiction.

---

[6] To be sure, the point to be made is that employment discrimination actions did not exist under the common law. But even if they did, this particular administrative proceeding would still not be considered an action arising under the common law because it is wholly equitable in nature, for the reasons already discussed.

## II.  ABM Fails to Show a Substantial Likelihood of Success on the Article II Claim

ABM also challenges the statutes providing for the removal of the OFCCP ALJs and the ARB members under Article II. But this challenge is quickly foreclosed by ABM's failure to connect the allegedly constitutionally infirm removal provisions to any harm, as required by controlling precedent. And on the merits, ABM's argument fails where, as is the case here, the Secretary has the discretion to review the ARB's decision and substitute that decision with her own. Thus, ABM also fails to show a substantial likelihood that it will prevail on the merits of its Article II claim.

### A.  ABM fails to show that the removal statutes are connected to a compensable harm.

The Supreme Court has made clear that relief from potentially unconstitutional removal provisions requires a showing that such provisions inflicted "compensable harm." *Collins v. Yellin*, 594 U.S. 220, 259, 141 S.Ct. 1761 (2021) ("*Collins*"). In *Collins*, although the removal provisions at issue were unconstitutional, the Supreme Court refused to hold that an officer's insulation from removal was enough to render all agency action taken under that officer void. *Id.* at 251, 259. "[M]ere existence of an unconstitutional removal provision . . . generally does not automatically taint Government action by an official unlawfully insulated." *Id.* at 267 (Thomas, J. concurring). Thus, to obtain a remedy, ABM must show that "the unconstitutional removal provision inflicted harm." *Id.* at 260. But the only harm that ABM alleges—being subject to the proceeding itself—is not supported by controlling caselaw.

#### 1.  Caselaw, including *Jarkesy*, shows that ABM has no sufficient harm.

Although the Motion heavily relies on *Jarkesy*, this case does not support ABM's proposition that being subject to administrative proceedings is sufficient harm. In fact, *Jarkesy* shows that ABM's argument is inconsistent with law. While the Fifth Circuit in *Jarkesy I* held that two layers of for-cause protection was unconstitutional for "stand[ing] in the President's way," the court declined to address whether vacating the SEC's judgment was an "appropriate remedy based on this error alone." 34 F.4th at 463, n.17. In declining to do so, the court cited to *Collins v. Yellen*, 27 F.4th 1068, 1069 (5th Cir.

16

2022) ("*Collins II*"), where the Fifth Circuit had remanded the case to the district court to determine what remedy, if any, was appropriate following the Supreme Court's holding that removal restrictions in that case were unconstitutional. 34 F.4th at 463 n.17 (citing *Collins*, 27 F.4th at 1069). Following the Fifth Circuit's remand to the district court in *Collins II* to determine the proper remedy for the unconstitutional removal restriction, the district court correctly applied precedent in finding no compensable harm. *Collins v. Lew*, 642 F.Supp.3d 577, 583 (S.D. Tex. 2022), *aff'd sub nom. Collins v. Dep't of the Treasury*, 83 F.4th 970 (5th Cir. 2023) ("*Collins III*"). The district court looked to Fifth Circuit caselaw that read *Collins* as requiring a party challenging an unconstitutional removal scheme to establish "a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Id.* at 584 (quoting *Cmty. Fin. Services Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*") (citing *Collins*, 27 F.4th at 632), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024). As the district court noted, this is consistent with other circuit court requirements. *Id. CFSA* also directed two additional requisites for proving harm under *Collins*: "a substantiated desire by the President to remove the unconstitutionally insulated actor," and "a perceived inability to remove the actor due to the infirm provision." 51 F.4th at 632. Finding no harm consistent with the *Collins* directive, the district court dismissed the action. *Id.* The Fifth Circuit affirmed and further reiterated the holdings in *Collins* and *CFSA* as requiring a showing that the removal restriction caused or would cause harm. *Collins II*, 83 F.4th at 982.

Supreme Court and Fifth Circuit caselaw in *Jarkesy*, *Collins*, and *CFSA* do not stand for ABM's proposition that the enforcement proceeding itself is the sufficient harm. In fact, ABM ignores *Collins* and *CFSA* by failing to show how the removal provisions at issue caused "compensable harm." As such, ABM has not provided evidence that the potentially unconstitutional nature of the removal protections inflicted harm as required by these cases. Thus, on a failure to show harm alone, ABM cannot show a substantial likelihood of succeeding on the merits of the Article II claim.

**2. ABM's claim that its harm is in the OFCCP proceeding itself is unsupported by controlling precedent.**

Rather than rely on controlling precedent for the compensable harm requirement, ABM quotes select language from the Supreme Court case, *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191, 143 S.Ct. 890 (2023), to argue that the harm is in the proceeding itself as "a here-and-now injury." *See* ECF No. 7 at 23. But ABM mischaracterizes *Axon* as applying to preliminary injunction injury. In *Axon*, the Supreme Court only addressed whether a district court had jurisdiction under 28 U.S.C. § 1331 to consider a constitutional challenge to an agency's structure where judicial review was normally only available for final agency actions. *Id.; FTC v. U.S. Anesthesia Partners, Inc.*, No. 24-20270, slip op. at 7 (5th Cir. Aug. 15, 2024) (order granting motion to dismiss appeal) ("*Axon* is a case about the original jurisdiction of federal courts under 28 U.S.C. [§] 1331.") (attached as Exhibit 1). In holding that preclusion of district court jurisdiction would foreclose all meaningful judicial review, the Supreme Court noted in its jurisdictional analysis that the challenging party had a "here-and-now injury." *Axon*, 598 at 191. *Axon* did not otherwise relieve a plaintiff of its burden to show compensable harm or otherwise establish any right to relief.

The "here-and-now injury" that ABM quotes in fact originates from *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 212, 140 S.Ct. 2183 (2020), a case involving standing issues in challenging an unconstitutional removal restriction. Specifically, the "here-and-now" language was used in the context of determining whether a claim challenging an unconstitutional removal provision was "ripe." *Id* at 212. Under *Seila Law*, a here-and-now injury suffices only to establish the standing of a challenger to a removal restriction. *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 765 (10th Cir. 2024) ("The Supreme Court's jurisdictional analysis in *Axon* did not change the relief analysis required under *Collins*."). In fact, the Supreme Court in *Collins* expressly dispelled any contrary reading, stating that "[w]hat we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." 594 U.S. at 259 n.24.

Nothing in *Axon* calls the holdings of *Collins*, *CFSA*, or *Jarkesy* into question. It therefore follows that the Motion's citations to lower courts relying on this reading of *Axon* are unavailing. *See* ECF No. 7 at 24. Thus, ABM cannot obtain a remedy for the allegedly unconstitutional removal provisions because there is no compensable harm. And reliance on a "here-and-now" injury is unavailing because this type of injury is limited to a review of whether a challenger has Article III standing—not whether it has suffered a compensable harm that the court can remedy for an Article II violation.

### B.  On the merits, the proceeding here is distinguishable from that in *Jarkesy*.

ABM also fails to show a substantial likelihood of success that the removal restrictions are unconstitutional. Contrary to ABM's construal, neither the Supreme Court nor the Fifth Circuit has created a per se rule that multilevel removal protections are constitutionally infirm. Instead, *Jarkesy* and *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 130 S.Ct. 3138 (2010) ("*Free Enterprise*") stand for the proposition that multilevel removal protections *can* be unconstitutional *if* those removal protections sufficiently insulate the relevant officers from presidential control. Because the Secretary—who lacks removal protection and serves at the pleasure of the President—may directly review decisions by the ARB, the President retains sufficient control.

A "key constitutional means" vested in the President was 'the power of appointing, *overseeing*, and *controlling* those who execute the laws.'" *Free Enterprise*, 561 U.S.at 501 (cleaned up) (emphasis added). In *Free Enterprise*, the Supreme Court, in holding that dual for-cause removal there was unconstitutional, "explained that the President must have adequate control over officers and how they carry out their functions." *Jarkesy*, 34 F.4th at 464 (citing *Free Enterprise*, 561 U.S. at 496). The Supreme Court noted that the members of the Public Company Accounting Oversight Board (PCAOB) answered to the SEC Commissioners, but SEC could remove them only for cause. *Free Enterprise*, 561 U.S. at 503. And the Court assumed that the President could remove SEC Commissioners only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 486–87, 502. The Supreme Court held

that this extensive two-tier system insulating the board members from removal deprived the President of the ability to adequately oversee the Board's actions. *Id.* at 492, 496. On similar grounds, the Fifth Circuit in *Jarkesy* held that the multilevel for-cause removal protections applicable to SEC ALJs were unconstitutional. *Jarkesy*, 34 F.4th at 464.

It is not the case that the President cannot adequately oversee the DOL ALJs. The Secretary maintains the ultimate discretion to review decisions of the ARB, the administrative adjudicatory body to which ALJ decisions may be appealed. *See* Secretary's Order 01-2020, 85 Fed. Reg. 13,186 (March 6, 2020); *see also* Rules Concerning Discretionary Review by the Secretary, Final Rule, 85 Fed. Reg. 30608, 30627 (May 20, 2020). Because the Secretary serves at the pleasure of the President, the Secretary's authority to review the ARB decisions at her discretion provides far more presidential control over the actions of ALJs than was exercised over the SEC ALJs in *Jarkesy*, whose decisions, as noted above, are reviewable within the agency only by Commissioners assumed to have for-cause removal protections. Unlike in ABM's cited cases, it cannot be said that the President lacks the control necessary to ensure that the laws are faithfully executed when the Secretary maintains the sole discretion to review ARB decisions and issue decisions that are final actions. ABM's cited cases thus do not show a substantial likelihood of success on the merits of its Article II claim.

### C. Preliminary injunctive relief is inappropriate because severance can resolve the threat of appearing before an unconstitutionally insulated ALJ.

Even if ABM shows that OFCCP's structure contains an unconstitutional two-prong removal provision and that it has suffered sufficient harm, preliminary injunction relief is still not proper. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625–627, 140 S.Ct. 2335 (2020); *see also Free Enterprise*, 561 U.S. at 508; *Seila Law*, 591 U.S. at 234. Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Barr*, 591 U.S.

at 630. And "it is fairly unusual for the remainder of a law not to be operative." *Id.* at 628. Here, severing the statutory removal restrictions would remedy the alleged constitutional violations.

To illustrate, in *Free Enterprise*, the Court found the PCAOB removal protections unconstitutional but rejected the plaintiffs' attempt to enjoin the PCAOB's operations. 561 U.S. at 508, 513. Instead, the Supreme Court severed the offending statutory provisions, leaving the members of the PCAOB freely subject to removal by the SEC. *Id.* Likewise, in *Seila Law*, the Supreme Court found the removal protections for the Director of the Consumer Financial Protection Bureau (CFPB) unconstitutional. 591 U.S. at 232. As a result, the Supreme Court severed the Director's removal protection, stating that "[t]he provisions of the [statute] bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction" and that "[t]hose provisions are capable of functioning independently." *Id.* at 235. Because severance would be the appropriate final remedy if any constitutional infirmity were present, ABM is not entitled to an injunction against OFCCP proceedings. *See, e.g., Free Enterprise*, 561 U.S. at 513; *Space Expl. Techs., Corp. v. Bell*, 701 F. Supp. 3d 626, 635 (S.D. Tex. 2023) (finding that the plaintiff had not shown entitlement to an injunction over severance of the allegedly unconstitutional removal claim); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury").

### III. ABM Fails to Show a Substantial Threat of Irreparable Harm

Even if ABM demonstrates a likelihood of success on its claims, a party is not entitled to injunctive relief "merely because an act is unconstitutional." *Richmond Hosiery Mills v. Camp*, 74 F.2d 200, 200 (5th Cir. 1934). Rather, ABM must show entitlement to injunctive relief "on some clear ground of equity jurisdiction." *Id.* But ABM does not offer "independent proof" of irreparable harm, let alone establish that such harm is likely to occur. There has been no determination made in the

proceedings, including any finding of fault against ABM. At best, the irreparable harm is speculative. ABM solely bases its irreparable harm on being subject to the ongoing OFCCP proceeding, a proceeding it in fact consented to when it sought to be a federal contractor.

### A. Unable to show a substantial likelihood that it will prevail on the Seventh Amendment claim, ABM's substantial threat of irreparable harm argument fails.

ABM has no independent proof of irreparable harm for its Seventh Amendment claim other than the mere fact that it is subject to an administrative proceeding. Tellingly, ABM's main authority for the proposition that the irreparable injury requirement is "automatically satisfied," *Burgess v. FDIC*, is a district court case that held this based on the court's determination that the plaintiff was likely to succeed on its Seventh Amendment Claim. 639 F.Supp.3d 732, 749 (N.D. Tex. 2022). *Burgess* involved a Federal Deposit Insurance Corporation proceeding involving breach of fiduciary duty and civil penalties. *Id.* at 747. As discussed above, the OFCCP administrative proceeding does not involve a common law claim or legal remedies, such as penalties. ABM provides no other basis for why this cherry-picked holding conditioned on that court's previous determination of a Seventh Amendment violation applies here. Notably, ABM's citations to select, out-of-context statements in other cases did not involve irreparable harm under a Seventh Amendment analysis. *See* ECF No. 7 at 22 (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976) ("The loss of First Amendment freedoms, for even minimal period of time, unquestionable constitutes irreparable injury."); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury . . . .")). Thus, ABM fails to show a substantial threat of irreparable harm arising from the alleged Seventh Amendment violation.

### B. ABM asserts a substantial threat of irreparable harm on the Article II claim based on a misapplication of the law.

ABM primarily bases its claim of irreparable harm for its Article II claim on the incorrect proposition that *Axon* makes independent proof unnecessary. But, as previously discussed, *Axon* did

not address the requisite irreparable harm for injunctive relief. Citation to select statements in *Axon* without context does not actually make out irreparable harm. *See* ECF No. 7 at 23 (citing *Axon*, 598 U.S. at 191). And ABM has not shown any evidence of actual harm from the alleged constitutional violations. ABM's only cited case in support of the irreparable harm requirement, the court refused to find the requisite harm solely because of an unconstitutional removal provision. *See Burgess*, 639 F.Supp.3d at 746 ("Overall, to obtain relief on an unconstitutional removal provision claim then, plaintiffs must show a connection between the President's frustrated desire to remove the actor and the agency action complained of.").

Notably, the Tenth Circuit recently affirmed the denial of a preliminary injunction sought on similar grounds. *See Leachco*, 103 F.4th at 765. In *Leachco*, the plaintiff could not identify anything about an ALJ proceeding that would be different if the challenged removal restrictions did not exist. *Id.* at 757. As a result, a preliminary injunction was inappropriate, because "[the plaintiff's] subjection to proceedings before an agency whose officials allegedly have unconstitutional protection against removal is insufficient, by itself, to establish irreparable harm." *Id.* Thus, ABM fails to show a substantial threat of irreparable harm simply due to the OFCCP ALJ removal provisions allegedly being unconstitutional.

### C. ABM's "real-world burdens of the proceedings" fail to show a substantial threat of irreparable harm.

Lastly, ABM argues that it faces an irreparable harm injury based on the "real-world burdens" of the OFCCP proceedings. *See* ECF No. 7 at 24. In other words, ABM claims that irreparable harm simply arises from the routine burdens of being subject to litigation. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51 (1938) ("[N]o way has been discovered of relieving a defendant from the necessity of a trial to establish the fact."). Even the case that the Motion heavily relies on, *Axon,* did not find litigation burdens sufficient to justify immediate court intervention. 598 U.S. at 192 ("We have made clear, just as the Government says, that 'the expense and disruption' of 'protracted

adjudicatory proceedings' on a claim do not justify immediate review."). The Supreme Court has repeatedly held that neither the "expense and annoyance of litigation" nor "litigation expense, even substantial and unrecoupable cost . . . constitute irreparable injury." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244, 101 S.Ct. 488 (1980) (cleaned up). This point is particularly relevant here where ABM agreed to be subject to the EO and the regulations when it contracted to provide services to the Government.

ABM also speculates that the OFCCP proceeding will tarnish its reputation and further suggests that the proceeding will provide the Government with "leverage to extract settlement terms." ECF No. 7 at 25 (quoting *Axon*, 598 U.S. at 216 (Gorsuch, J., concurring)). The former claim is unsupported both by any factual evidence of reputational harm and any legal authority that reputational harm from an agency proceeding is irreparable. Tellingly, ABM has no evidence of reputational harm despite the pendency of the OFCCP proceeding for over three years. This fact further undermines ABM's suggestion that OFCCP has leverage to extract settlement. Regardless, claimed reputational harm "falls far short of the type of irreparable injury which is a necessary predicate" to injunctive relief. *Sampson v. Murray*, 415 U.S. 61, 91–92, 94 S.Ct. 937 (1974). ABM thus fails to show a substantial threat of irreparable harm arising from the "real-world" burdens.

## IV. Finally, the Balance of Equities and the Public Interest Factors Weigh Against Granting a Preliminary Injunction

Because the Government is the opposing party to this lawsuit, the final two factors of balance of harms and the public interest merge. *See Nken*, 556 U.S. at 435. It is axiomatic that "the public has a powerful interest in the enforcement of duly enacted laws." *League of United Latin Am. Citizens v. Abbott*, 601 F.Supp.3d 147, 184 (W.D. Tex. 2022) (cleaned up). The law here, EO 11246, has repeatedly been upheld to be issued pursuant to the President's statutory and constitutional authority. *See, e.g.*, *United States v. New Orleans Pub. Serv., Inc.*, 553 F.2d 459, 465–67 (5th Cir. 1977); *Contractors Ass'n of E. Pa. v. Sec'y of Labor*, 442 F.2d 159, 166–71 (3d Cir. 1971); *Uniroyal, Inc. v. Marshall*, 482 F.Supp.364, 368

(D.D.C. 1979). A preliminary injunction also threatens to remove OFCCP's enforcement of the EO by emboldening other contractors to violate their own contracts, despite there being no final judgment on the matter.

ABM's argument that an injunction would cause "no cognizable harm" (ECF No. 7 at 25) ignores the public interest promoted by the EO nondiscrimination requirements. *First Alabama Bank of Montgomery, N.A. v. Donovan*, 692 F.2d 714, 721 (11th Cir. 1982) (recognizing "a relatively strong public interest in providing for full equal employment opportunity" through EO 11246). This is further supported by the language of the EO. ABM does not attempt to address the disservice to the public interest and ignores the further harms that preliminary injunctive relief would impose on the individuals already harmed by ABM's alleged discriminatory hiring practices. Halting the OFCCP proceeding during the pendency of the present action, which has already been ongoing for three years, would raise the likelihood that, in the interim, "records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused." *IAM Loc. Lodge No. 1424 v. NLRB*, 362 U.S. 411, 419, 80 S.Ct. 822 (1960) (cleaned up).

In sum, granting the extraordinary remedy of a preliminary injunction would disserve the public interest by crippling the Government's pursuit of equal employment and relief on behalf of affected applicants and doing so merely because a private contractor who, years into an administrative proceeding, no longer wishes to be subject to those proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction should be denied.